08-6262-cr
USA v. Van Buren

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2009

(Argued: January 22, 2010                    Decided: March 17, 2010)

Docket No. 08-6262-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

BARCLAY J. VAN BUREN, JR.,

*Defendant-Appellant.*[1]

_____

Before: WALKER, STRAUB, and LIVINGSTON, *Circuit Judges.*

_____

The United States District Court for the Northern District of New York  (Thomas J.

McAvoy, *Judge*) entered a judgment of conviction and sentence against defendant-appellant

after a jury found him guilty of failing to comply with the requirements of the Sex Offender

Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250 and 42 U.S.C. § 16901 *et seq.*

Defendant-appellant appeals, arguing that the District Court erred in denying his motion to

---

[1]  The Clerk of Court is respectfully directed to amend the caption to conform to the listing above.

dismiss the indictment and erred in its instructions to the jury. In particular, defendant-appellant argues that his indictment should have been dismissed for the following reasons: (1) SORNA exceeds Congress's Commerce Clause authority; (2) SORNA impermissibly delegates legislative authority to the executive branch; and (3) SORNA should not apply to him because the states in which he traveled and resided have not yet implemented SORNA. In addition, defendant-appellant argues (4) that the District Court erred in instructing the jury about the scope of his duties under SORNA. For the reasons set forth below, the judgment of the District Court is AFFIRMED.

_____

JAMES P. EGAN, Office of the Federal Public Defender (Alexander Bunin, Federal Public Defender, and Lisa A. Peebles, First Assistant Federal Public Defender, *on the brief*), Syracuse, N.Y., *for Defendant-Appellant*.

RICHARD A. FRIEDMAN, Appellate Section, Criminal Division, United States Department of Justice (Lanny A. Breuer, Assistant Attorney General, and Gary G. Grindler, Deputy Assistant Attorney General, Criminal Division, United States Department of Justice; Andrew T. Baxter, United States Attorney, and Kevin P. Dooley and Brenda K. Sannes, Assistant United States Attorneys, Northern District of New York; *on the brief*), Washington, D.C., *for Appellee*.

_____

STRAUB, *Circuit Judge*:

The United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*) entered a judgment of conviction and sentence against defendant-appellant Barclay J. Van Buren, Jr., after a jury found him guilty of failing to comply with the requirements of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250 and 42 U.S.C. § 16901 *et seq.* Defendant appeals, arguing that the District Court erred in

denying his motion to dismiss the indictment and erred in its instructions to the jury. More specifically, defendant argues that his indictment should have been dismissed for the following reasons: (1) SORNA exceeds Congress's Commerce Clause authority; (2) SORNA impermissibly delegates legislative authority to the executive branch; and (3) SORNA should not apply to him because the states in which he traveled and resided have not yet implemented SORNA. In addition, defendant argues that (4) the District Court erred in instructing the jury about the scope of his duties under SORNA. For the reasons set forth below, we reject all four of defendant's arguments.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      Defendant's Underlying Federal Sex Offense and Previous Violations of Supervised Release**

On March 19, 2002, defendant pleaded guilty in the United States District Court for the Northern District of New York to receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). As a consequence of that conviction, defendant was required to register as a sex offender in New York State, which he first did in June 2004.

While defendant was serving his three-year term of supervised release for his March 2002 federal sex offense conviction, he did not abide by the conditions of his supervised release and, as a result, was resentenced to six months of incarceration to be followed by a new term of thirty months of supervised release. While serving this new term of supervised release, defendant again violated the conditions of his supervised release, this time by failing to "refrain from places where individuals under the age of 18 are likely to congregate." Accordingly, on October 19, 2006, the District Court revoked defendant's term of supervised release and

3

sentenced him to an additional twelve months of imprisonment, to be followed by a new term of eighteen months of supervised release.

**II.    Defendant's Failure to Update Registry and Subsequent Arrest**

After being released from incarceration and beginning a third term of supervised release, defendant lived in the Dixie Hotel at 106 Henry Street, Binghamton, New York, which was his registered address in the New York sex offender registry. Home confinement was a condition of defendant's supervised release, and defendant was required to wear an electronic monitoring device and inform his probation officer of his movements. On February 20, 2008, defendant signed out of his residence and failed to return or contact his probation officer. On March 7, 2008, the United States Marshals Service filed a criminal complaint against defendant, alleging that he failed to register or update his registration information as required by SORNA, in violation of 18 U.S.C. § 2250. An arrest warrant issued, and law enforcement officers arrested defendant that night at his mother's residence in Burlington, North Carolina. At no time between February 20, 2008, and his arrest on March 7, 2008, did defendant update his residency information with the New York sex offender registry, nor did he register in North Carolina.

**III.    Indictment**, **Denial of Motion to Dismiss, and Jury Instruction**

On April 17, 2008, an indictment returned in the United States District Court for the Northern District of New York charged that defendant, being "an individual required to register under [SORNA] by reason of his conviction under federal law, did travel in interstate commerce and did knowingly fail to register and update his registration as required by law," in violation of 18 U.S.C. § 2250(a).

4

Prior to trial, defendant moved to dismiss the indictment on various statutory and constitutional grounds. The District Court denied defendant's motion in a thorough decision filed on August 8, 2008. Pertinent to the present appeal, the District Court rejected defendant's arguments that SORNA (1) exceeds Congress's authority under the Commerce Clause, (2) violates the non-delegation doctrine, and (3) did not apply to him because New York and North Carolina have not yet implemented the statute.

At trial, the parties disputed whether the termination of defendant's New York residence constituted a "change" in residence sufficient to trigger his duty under SORNA to update his registration information. Defendant argued that termination of his old residence was insufficient and that he was required to update his registration information only upon establishing a new residence. The District Court rejected defendant's argument, instructing the jury in accordance with the government's requested charge that terminating a residence with no intention of returning constitutes a "change" in residence under SORNA.

## DISCUSSION

### I. Defendant's First Three Arguments

Defendant concedes that the first three issues that he raises on appeal—whether SORNA exceeds Congress's Commerce Clause authority; whether SORNA impermissibly delegates legislative authority to the executive branch; and whether SORNA applies to defendant even though New York and North Carolina have not yet implemented SORNA—are foreclosed by our recent opinion in *United States v. Guzman*, 591 F.3d 83 (2d Cir. 2010). Because defendant's first three arguments are the same as those that we rejected in *Guzman*, we find no error in the

5

District Court's decision that rejected these three arguments and denied defendant's motion to dismiss the indictment.

**II.      Defendant's Argument Regarding the Jury Instruction**

The only issue not foreclosed by our recent decision in *Guzman* is defendant's argument that the District Court incorrectly instructed the jury about the scope of defendant's registration duties under SORNA.  Under SORNA, a convicted sex offender must register "and keep the registration current, in each jurisdiction where the offender resides," is employed, or is a student. 42 U.S.C. § 16913(a).  More specifically, under 42 U.S.C. § 16914, a convicted sex offender must "provide . . . [t]he address of each residence at which the sex offender resides or will reside." *Id.* § 16914(a)(3).  Moreover, within "3 business days after each *change* of name, residence, employment, or student status," section 16913(c) provides that a registrant must "appear in person" at an appropriate office "and inform [the] jurisdiction of all changes in the information required for that offender in the sex offender registry." *Id.* § 16913(c) (emphasis added).  The jurisdiction so informed must then share that information with other jurisdictions where the offender is required to register. *Id.*  Under SORNA's criminal enforcement provision, if an individual who is required to register knowingly fails to register or keep the registration information current, the offender is subject to a fine, imprisonment, or both.  18 U.S.C. § 2250(a).

According to the government, "[t]he principal legal and factual dispute at trial was whether the government . . . had to prove that [defendant] established a new residence elsewhere, or whether his termination of the hotel residence was a sufficient 'change' to his residency to

6

trigger the requirement that he update his registration information" under SORNA. Brief of Appellee at 10. With regard to this issue, the District Court accepted the government's position that termination of a residence with no intention of returning is sufficient to trigger a registrant's duty to update his information and delivered the following jury instruction over defendant's objection:

> The Sex Offender Registration and Notification Act requires a sex offender to report a change of name, residence, employment, or student status within three days after any such change. The report must be provided to either the state where the sex offender resides, works, or is a student.
> To change something means to make different from what it is; or to substitute one thing for another. One's residence is defined as where one reside[s] or maintains his home. The term resides means location of the individual's home or other place where the individual habitually lives. A change in residence does not require that you find that the defendant has established a new residence. Rather, it's enough for you to find that the defendant's home or other place where he habitually lives is no longer the same as the one listed in the registry. Accordingly, if you find the defendant left the residence listed in the registry with no intention of returning and knowingly failed to notify the registry of that fact within three days of the change, then you must find that this third element has been satisfied. On the other hand, if you find the defendant left the residence listed in the registry, but intended to return to the residence listed in the registry, then you must find that this element has not been satisfied.

Although we review challenged jury instructions *de novo*, "we will reverse only where the charge, viewed as a whole, either failed to inform the jury adequately of the law or misled the jury about the correct legal rule." *United States v. Quinones*, 511 F.3d 289, 314 (2d Cir. 2007) (internal quotation marks omitted), *cert. denied*, 129 S. Ct. 252 (2008). In the present case, defendant objects to the above instruction, arguing that instead of simply requiring that a defendant leave a registered address with no intention of returning, to "change" one's residence requires establishing a new residence. In making this argument, defendant asserts that there are

7

two possible definitions of the word "change": (1) "change" that means "to change from something to nothing" and (2) "change" that means to "change from something to something else." Opening Brief of Appellant at 58. Defendant argues that SORNA's statutory context makes clear that "change" in this situation means to "change from something to something else" and, therefore, the statute should be interpreted as requiring only that a registrant update his residence information upon establishing a new residence. As an alternative argument, defendant asserts that, if ambiguity exists about which definition of "change" SORNA employs, the rule of lenity requires that we read the statute in defendant's favor.

There are several problems with defendant's arguments. First, defendant's conduct in terminating his residence to travel to North Carolina, with no intention of returning to his residence in New York, qualifies as a "change" in his residence regardless of which definition of "change" one uses. Defendant's conduct qualifies as a "change" in the sense of "chang[ing] from something to nothing" because he has gone from having a residential address to having no permanent address. Defendant's conduct also constitutes a "change" in the sense of "chang[ing] from something to something else" because defendant has gone from having a fixed residence to having an itinerant or constantly moving residence. Therefore, whichever definition one uses, defendant's conduct violates the requirement that he update his registration information when his residence changes.[2]

_____

[2] Defendant conceded at oral argument that, were we to reject his definition of "change," he would have been required to notify the registry of his termination of residence. Because we interpret SORNA as requiring a sex offender to appear in person to update his registration information within three days of vacating his fixed residential address with no intention of returning, we do not hesitate to conclude that Van Buren violated 18 U.S.C. §

Second, even if we were to credit defendant's argument that there are two distinct definitions of "change" and that defendant's conduct constitutes "change" under only one of those definitions, it is nevertheless clear from SORNA's language and legislative history that SORNA applies to defendant's conduct. We therefore reject defendant's argument that SORNA is ambiguous and that the rule of lenity requires us to interpret SORNA in defendant's favor. As the Supreme Court has noted, "Because the meaning of language is inherently contextual, we have declined to deem a statute 'ambiguous' for purposes of lenity merely because it was *possible* to articulate a construction more narrow than that urged by the Government." *Moskal v. United States*, 498 U.S. 103, 108 (1990). Rather, the Supreme Court has "reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* (internal quotation marks omitted); *see Reno v. Koray*, 515 U.S. 50, 65 (1995) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." (internal citations and quotation marks

_____

2250(a). However, we express no opinion about Van Buren's continuing registration obligations under SORNA or whether an itinerant sex offender who has no fixed address must update his registration information within three business days of every move to a new, transient location.

We further note that, according to the District Court's jury instructions, a registrant's duty to update his residence information would be triggered only if the registrant terminated his registered residence with no intention of returning and that his duty to update his residence information would not be triggered if the registrant intended to return to his registered residence. Accordingly, had the jury found that defendant merely intended to visit his mother in North Carolina and that defendant intended to return to his New York residence, defendant would not have been convicted of violating SORNA. *See United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998) ("Juries are presumed to follow their instructions." (alteration and internal quotation marks omitted)), *cert. denied sub nom.*, *Abouhalima v. United States*, 525 U.S. 1112 (1999).

9

omitted)).

In enacting SORNA, "Congress's goal was . . . to 'establish[] a comprehensive national system for the registration of [sex] offenders. In other words, Congress wanted to make sure sex offenders could not avoid all registration requirements just by moving to another state." *Guzman*, 591 F.3d at 91; *id.* (noting that the requirement that convicted sex offenders register intrastate changes in residence is "a perfectly logical way to help ensure that states will more effectively be able to track sex offenders when they do cross state lines"). As set forth in a House Report regarding the Children's Safety Act of 2005, an earlier bill with sex offender registration and notification provisions similar to those later enacted in SORNA: "The most significant enforcement issue in the sex offender program is that over 100,000 sex offenders, or nearly one-fifth in the Nation[,] are 'missing,' meaning that they have not complied with sex offender registration requirements. *This typically occurs when the sex offender moves from one State to another*." H.R. Rep. No. 109-218(I) (2005), 2005 WL 2210642 (emphasis added); *see also* 152 Cong. Rec. S8012-02, S8014 (daily ed. July 20, 2006), 2006 WL 2034118 (statement of SORNA co-sponsor Sen. Biden) ("One of the biggest problems in our current sex offender registry system happens when registered sex offenders travel from one State to another.").
"When a sex offender fails to register [or keep his registration current] in a State in which he or she resides, there is no effective system by which the States can notify each other about the change in a sex offender[']s status." H.R. Rep. No. 109-218(I) (2005), 2005 WL 2210642. As a means of addressing this problem and establishing a comprehensive national registration system, SORNA provides that each registrant must "keep [his] registration current," 42 U.S.C. §

16913(a), and "appear in person" at an appropriate office "not later than 3 business days after each change of name, residence, employment, or student status . . . and inform [the] jurisdiction of all changes in the information required for that offender in the sex offender registry," *id.* § 16913(c).

Between SORNA's language and legislative history, it is clear that a registrant must update his registration information if he alters his residence such that it no longer conforms to the information that he earlier provided to the registry. Without accurate registration information, SORNA would be ineffective. If a sex offender terminated his residence with no intention of returning and were not required to update his residence information, it would enable him to evade registration requirements, and thus, law enforcement, by leading an itinerant lifestyle. By contrast, requiring such a sex offender to appear in person at an appropriate office within three business days of terminating his residence would enable the jurisdiction to ask pertinent questions about the registrant's future plans. This, in turn, would diminish the likelihood that the registrant would go "missing" and would further SORNA's purpose of creating a comprehensive national sex offender registration system. In sum, based on the language and legislative history of SORNA, we conclude that SORNA requires a convicted sex offender to update his registration information in person upon terminating his current residence with no intention of returning, even if the sex offender has not yet established a new residence.

## CONCLUSION

For the reasons set forth above, the judgment of the District Court is AFFIRMED.