McLAUGHLIN, Circuit Judge:
Defendant-Appellant Ross A. Fuller, III, (“Fuller”) appeals from an April 2, 2009, judgment of conviction entered in the United States District Court for the Northern District of New York (Scullin, /.), following a conditional guilty plea to a violation of 18 U.S.C. § 2250, the criminal enforcement provision of the federal Sex Offender Registration and Notification Act (“SORNA” or the “Act”), 42 U.S.C. § 16901 et seq. This provision “established a federal criminal offense covering, inter alia, any person who (1) ‘is required to register under [SORNA],’ (2) ‘travels in interstate or foreign commerce,’ and (3) ‘knowingly fails to register or update a registration.’ ” Carr v. United States, — U.S. -, 130 S.Ct. 2229, 2232, 176 L.Ed.2d 1152 (2010) (quoting 18 U.S.C. § 2250). Fuller, who was previously convicted of a sex offense under Missouri state law and subsequently moved to New York, was arrested, indicted, and later pled guilty to failing to register as a sex offender and keep his registration current in accordance with SORNA’s requirements. See 42 U.S.C. § 16913(a), (c).
*501 Fuller’s relevant interstate travel occurred in the period between SORNA’s enactment on July 27, 2006, and the issuance of an interim ruling by the Attorney General on February 28, 2007, affirming SORNA’s applicability to sex offenders whose predicate sex offense convictions occurred prior to SORNA’s enactment (the “Interim Ruling”). See 72 Fed.Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3 (2007)). The question before us, then, is whether SORNA applied to sex offenders in Fuller’s circumstances upon its enactment or only upon issuance of the Interim Ruling. This is a question of first impression in this Circuit, and, as the Supreme Court noted in Carr while expressly declining to reach the matter, our sister Circuits are divided as to the answer. See Carr, 130 S.Ct. at 2234 n. 2. Today, we hold that SORNA applied upon enactment to sex offenders, like Fuller, whose predicate sex offense convictions predate SORNA.
Fuller also argues that a conviction under SORNA requires a showing of specific intent to violate the Act’s requirements. We disagree, and hold that violation of SORNA’s criminal enforcement provision is a general intent crime.
Therefore, the judgment of the district court is AFFIRMED.
BACKGROUND
On April 26, 2004, Fuller pled guilty to statutory sodomy in the second degree in Missouri. In August 2004, following his release, Fuller signed a Missouri Offender Registration Notification form, acknowledging his status as a sex offender and his continuing obligations under state law to (1) provide periodic address verifications, (2) inform law enforcement of any change of address, (3) notify law enforcement if he moved to another state, and (4) comply with the sex offender registration requirements of any state to which he moved.
From November 2004 through June 2006, Fuller complied with his address verification requirement, reporting that he resided in St. Louis, Missouri. After June 2006, however, Missouri authorities stopped receiving notice from Fuller. A warrant was thereafter issued for his arrest.
In September 2007, U.S. Marshals learned that Fuller was living in New York. Fuller was arrested on October 19, 2007, at which time he had failed to register as a sex offender in New York or update his registration in Missouri. He was charged in the Northern District of New York as “an individual required to register under [SORNA]” who “traveled] in interstate commerce and knowingly fail[ed] to register or update his registration as required by [SORNA].”
On November 21, 2007, Fuller moved to dismiss the indictment, arguing, inter alia, that (1) he was not subject to SORNA because his relevant interstate travel occurred prior to the Interim Ruling; and (2) prosecuting him under SORNA would violate the Ex Post Facto Clause. The district court denied Fuller’s motion. See United States v. Fuller, No. 5:07-CR-462, 2008 WL 5600709 (N.D.N.Y. Mar. 27, 2008).
Thereafter, Fuller asked the district court to instruct the jury, in the event he went to trial, that, in order to find him guilty, it had to find that he had specific intent to violate SORNA’s requirements. The district court denied the requested charge, and, instead, indicated that the jury would be given a general intent instruction, and would not be required to find that Fuller sought specifically to violate federal law.
*502 Following the denial of his requested jury charge, Fuller pled guilty pursuant to a conditional plea agreement, which preserved his right to appeal the district court’s rulings. Fuller was then sentenced to time served (532 days), 10 years’ supervised release, and a $100 special assessment.
DISCUSSION
On appeal, Fuller principally asserts that his conviction under SORNA is improper because his predicate sex offense conviction occurred prior to SORNA’s enactment and his relevant interstate travel and failure to register occurred before SORNA became applicable to him as a result of the Attorney General’s Interim Ruling. Fuller also argues that his conviction required a showing of specific intent to violate the Act’s requirements, which the Government failed to present. These are questions of first impression in this Circuit.
I. SORNA’s Statutory Provisions
SORNA was enacted on July 27, 2006, to “protect the public from sex offenders” and to “establish[] a comprehensive national system for the registration of those offenders.” 42 U.S.C. § 16901. A “sex offender” is defined as an “individual who was convicted of a sex offense,” without limitation as to the time of conviction. 42 U.S.C. § 16911(1). SORNA provides criminal liability for “any person who (1) ‘is required to register under [SORNA],’ (2) ‘travels in interstate or foreign commerce,’ and (3) ‘knowingly fails to register or update a registration.’ ” Carr, 130 S.Ct. at 2232 (quoting 18 U.S.C. § 2250).
SORNA’s registration requirements are as follows:
(a) In general
A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
(b) Initial registration
The sex offender shall initially register—
(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
(c) Keeping the registration current
A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
42 U.S.C. § 16913(a)-(c).
Section 16913 also grants the Attorney General certain authority with respect to sex offender registration:
(d) Initial registration of sex offenders unable to comply with subsection (b) of this section
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before [the *503 enactment of SORNA on] July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.
Id. § 16913(d). Pursuant to this section, on February 28, 2007, the Attorney General issued an Interim Ruling concerning “whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA.” 72 Fed.Reg. at 8896. The Interim Ruling stated that
SORNA’s direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders in the categories for which SORNA requires registration.
Id. at 8895. The Attorney General made plain that the Interim Ruling was issued, not because SORNA failed to make its registration rules applicable to pre-SORNA sex offenders, but rather “to specify th[e] scope of application for SORNA, regardless of whether SORNA would apply with such scope absent th[e] rule.” Id. at 8896. Thus, the Interim Ruling “foreclose[d] ... claims [that SORNA did not apply upon enactment to pre-SORNA sex offenders] by making it indisputably clear that SORNA applies to all sex offenders ... regardless of when they were convicted.” Id.
In Carr, the Supreme Court recently held that criminal liability under SORNA “cannot be predicated on pre-SORNA travel,” 130 S.Ct. at 2233, and went on to explain that “[o]nce a person becomes subject to SORNA’s registration requirements, which can occur only after the statute’s effective date, that person can be convicted under § 2250 [only] if he thereafter travels and then fails to register,” id. at 2236 (emphasis added).
Accordingly, if SORNA did not apply to Fuller until the Interim Ruling, then his interstate travel would have occurred before he was “subject to SORNA’s registration requirements.” Id. If, on the other hand, Fuller became “subject to” SORNA upon its enactment, then his post-SORNA interstate travel and failure to register was unlawful irrespective of the Interim Ruling.
II. Fuller’s Challenges to SORNA
A. Section 16913(d)
The principal question before us is the meaning and effect of § 16913(d) of SORNA. Section 16913(d) grants the Attorney General “the authority to specify the applicability of [SORNA’s registration] requirements ... to sex offenders convicted before [SORNA’s enactment] ..., and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with [the initial registration requirements of § 16913(b) ].” 42 U.S.C. § 16913(d).
We review the interpretation of a federal statute de novo. See Muller v. Costello, 187 F.3d 298, 307 (2d Cir.1999). “It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment.” Gozlon-Peretz v. United States, 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). Thus, we must determine whether § 16913(d) constitutes a clear direction by Congress to leave the determination of SORNA’s applicability to pre-SORNA sex offenders solely to the *504 Attorney General’s discretion.[1]
As is always the case with statutory interpretation, our first task is “to determine whether the language at issue has a plain and unambiguous meaning.” Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). A particular statute’s “plain meaning can best be understood by looking to the statutory scheme as a whole,” United States v. Gayle, 342 F.3d 89, 93 (2d Cir.2003), and “[t]he meaning of a particular section in a statute [should] be understood in context ... by appreciating how sections relate to one another,” Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 144 (2d Cir.2002). “In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute.” Id. If in taking the entire statute as a whole its plain meaning can be ascertained, “[o]ur inquiry must cease.” Robinson, 519 U.S. at 340, 117 S.Ct. 843. Given the purpose and structure of SORNA, we find that § 16913(d), in the context of the statute as a whole, is ultimately susceptible to only one interpretation.
Section 16913(d) is properly construed as consisting of two separate clauses. The first clause provides that the “Attorney General shall have the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted before [SORNA’s enactment on] July 27, 2006.” 42 U.S.C. § 16913(d). The second clause provides that “[t]he Attorney General shall have the authority ... to prescribe rules for the registration of [sex offenders described in the first clause] and for other categories of sex offenders who are unable to comply with subsection (b) of this section.” Id.
Fuller argues that the first clause is best understood to mean that “the decision whether to apply SORNA to offenders whose [predicate sex offense] convictions predated SORNA’s enactment rest[s] solely with the Attorney General.” Appellant’s Br. 49 (emphasis added). This argument fails for at least two reasons.
First, we are unpersuaded that subsection (d) should be read to equate “specify” with “determine in the first instance.” The language in the first clause of subsection (d) recognizes the Attorney General’s authority in an already existent context. That is, in order for the Attorney General to “specify the applicability” of SORNA’s registration requirements to “sex offenders convicted before [SORNA’s enactment],” 42 U.S.C. § 16913(d), there must already be registration requirements applicable to pre-SORNA sex offenders that require specification.
To hold otherwise would require us to construe the Act as granting the Attorney General the power to decide whether an entire class of individuals not previously subject to criminal liability could, solely at the Attorney General’s choosing, become subject to such liability. While we have already suggested that such a delegation would not necessarily be unconstitutional, see United States v. Guzman, 591 F.3d 83, 92 (2d Cir.2010), the reasonableness of such a proposed construction still bears on *505 our interpretation, see United States v. Hinckley, 550 F.3d 926, 948 (10th Cir.2008) (Gorsuch, J., concurring) (urging that broad interpretation of the Attorney General’s authority under § 16913(d) be rejected because such “unfettered discretion” is incompatible with the non-delegation doctrine’s requirement of an “intelligible principle” to guide the exercise of delegated authority). Even if constitutionally permissible, it would seem passing strange that Congress would grant the Attorney General sole authority to determine SORNA’s criminal reach by cabining this expansive and profound power in a single independent clause preceding an unrelated, highly specific, and purely administrative grant of authority, located under an inapposite heading in the fourth subsection of a subchapter of the statute.[2] See 42 U.S.C. § 16913(d). Such a construction would, to say the least, contravene our obligation “to interpret [the] statute so as to give it reasonable meaning.” United States v. Arnold, 126 F.3d 82, 89 (2d Cir.1997).
Second, also of note about the language Congress employed in the first clause of subsection (d) is that, whatever authority it grants, it does not require that it be exercised. See, e.g., United States v. DiTomasso, 621 F.3d 17, 24-25 (1st Cir.2010). Thus, in order to hold that subsection (d) commits to the Attorney General the sole authority to determine SORNA’s applicability to pre-SORNA offenders, we must also believe that Congress was indifferent as to whether the Attorney General would in fact do so. This we cannot do.
Congress’s stated purpose in enacting SORNA was to create “a comprehensive national system for the registration of [sex] offenders.” 42 U.S.C. § 16901 (emphasis added). In formulating this goal, Congress specifically noted the existence of more than 500,000 convicted sex offenders at the time of SORNA’s enactment, of which as many as 150,000 were not compliant with state and federal registration requirements. See 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch).
Given SORNA’s objectives, we do not think Congress was so agnostic as to whether the half million sex offenders convicted prior to SORNA’s enactment were required to comply with SORNA’s registration requirements as to grant the Attorney General sole authority over that determination. See Langhorne v. Ashcroft, 377 F.3d 175, 180 (2d Cir.2004) (“It is axiomatic ‘that ... in interpreting legislation, we are not guided by a single sentence or member of the sentence but (rather) look to the provisions of the whole law, and to its object and policy.’ ” (quoting Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962))). Indeed, reading subsection (d) as Fuller does would undermine the entire purpose of the statute. We agree with the view of the Attorney General, as expressed in his February 2007 Interim Ruling, that:
*506 If SORNA were deemed inapplicable to sex offenders convicted prior to its enactment, then the resulting system for registration of sex offenders would be far from “comprehensive,” and would not be effective in protecting the public from sex offenders because most sex offenders who are being released into the community or are now at large would be outside of its scope....
72 Fed.Reg. at 8896.
The far more reasonable interpretation of § 16913(d) is that Congress itself had already made the determination that SORNA applied to all sex offenders regardless of when convicted, and merely delegated to the Attorney General authority to work out the specific manner in which that legislative determination would be enforced with respect to pre-SORNA sex offenders, as well as those unable to comply with SORNA’s initial registration rules.
The basic structure of the statute supports this reading. A “sex offender” to whom SORNA applies, for example, is defined as “an individual who was convicted of a sex offense,” without any reference to the date of conviction, 42 U.S.C. § 16911(1); the general registration requirements of § 16913 also do not distinguish between sex offenders convicted before and after SORNA’s enactment, rather subsections (a), (b), and (c) state simply that a “sex offender shall” register and keep his registration current, without reference to the date of conviction, id. § 16913(a)-(c); and additional ancillary sections relating to what information is required of sex offenders, the duration of the registration requirements, and the need for sex offenders to comply with periodic verification procedures likewise make no distinction among sex offenders based on their date of conviction, see id. §§ 16914, 16915, 16916.
We are guided in our determination by the presumption that a law takes effect upon enactment absent a clear direction to the contrary. See Gozlon-Peretz, 498 U.S. at 404, 111 S.Ct. 840. For the reasons above, subsection (d) cannot be construed as a clear indication that Congress intended to leave SORNA’s criminal reach to the discretion of the Attorney General. Cf. DiTomasso, 621 F.3d at 23 (“Subsection (d) is anything but a clear direction [that SORNA did not take effect upon enactment].”). To the contrary, in our view, the first clause of § 16913(d) constitutes a clear pronouncement by Congress of SORNA’s general applicability to pre-SORNA sex offenders, while the second clause grants the Attorney General rule-making authority over two classes of sex offenders: (1) those pre-SORNA offenders addressed in the first clause— “such sex offenders” — and (2) “other categories of sex offenders” unable to comply with subsection (b). 42 U.S.C. § 16913(d) (emphasis added). In other words, § 16913(d) grants the Attorney General two separate but closely related powers: (1) the power to specify how — not whether — SORNA’s registration requirements apply to the subset of sex offenders who were convicted prior to SORNA’s enactment, and (2) the power to promulgate the precise registration rules applicable to that subset, as well as to sex offenders unable to comply with § 16913(b) for any other reason.
Under this reading, the Attorney General’s power “to specify the applicability of the requirements of [SORNA]” refers to his authority to work out the complications that may arise in the application of a new federal criminal law to an already existent class of offenders, the myriad permutations of which Congress chose not to address in the Act itself, in order to ensure an efficient and “comprehensive” national sex offender registration system. See 42 *507 U.S.C. § 16901. For example, § 16915 concerns the duration of time for which the various classes of sex offenders defined by SORNA are required to keep their registration active, with reductions for maintaining a clean record. Under the authority granted by § 16913(d), the Attorney General could (but is not required to) elect to shorten or otherwise modify the length of time a sex offender, convicted many years before SORNA’s enactment and who has exhibited good behavior, must maintain his registration. See DiTomasso, 621 F.3d at 23 (“When viewed as a part of a seamless regulatory scheme, subsection (d) ... reflects] Congress’s recognition that specific applications of the registration requirements to previously convicted sex offenders may have unintended consequences ... [and thus] allows — but does not compel — the Attorney General to narrow SORNA’s sweep if and to the extent that he concludes that specific situations invite such narrowing.”).
Although this construction admits a small degree of superfluity, such surplus-age can be forgiven in light of SORNA’s overarching purpose and its general structure. See Lamie v. U.S. Tr., 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (“Surplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute.”). After all, we are not called upon to construe Platonic forms of statutes, but real ones passed by Congress, whose intent we must respect.
In sum, “appreciating how [SORNA’s] sections relate to one another,” Auburn Hous. Auth., 277 F.3d at 144, and placing § 16913(d) “within the context” of SORNA as a whole, Gayle, 342 F.3d at 93, we hold that SORNA applied upon its enactment to all sex offenders regardless of when convicted, including Fuller.
B. General versus Specific Intent
Fuller further argues that the district court erred in denying his requested jury charge that SORNA requires specific intent. This Court reviews jury charges de novo. See United States v. Van Buren, 599 F.3d 170, 173 (2d Cir.2010). SORNA’s criminal provision requires proof that the accused “knowingly fail[ed] to register or update a registration.” 18 U.S.C. § 2250(a)(3). This Court has held that the use of “knowingly” in a statute “typically signals that the statute only requires a finding of general intent for conviction.” United States v. George, 386 F.3d 383, 389 n. 6 (2d Cir.2004). General intent “does not necessarily [refer] to a culpable state of mind or to knowledge of the law,” rather, the term “merely requires proof of knowledge of the facts that constitute the offense.” Bryan v. United States, 524 U.S. 184, 192-93, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).
Whether SORNA requires specific or general intent is a question of first impression in this Circuit, but every Circuit to have considered the matter has held that SORNA is a general intent crime. See, e.g., United States v. Gould, 568 F.3d 459, 468 (4th Cir.2009) (“SORNA’s criminal provision is not a specific intent law ... [t]here is no language requiring specific intent or a willful failure to register such that [the defendant] must know his failure to register violated federal law.”); United States v. Shenandoah, 595 F.3d 151, 159 (3d Cir.2010) (same); United States v. Vasquez, 611 F.3d 325, 328-29 (7th Cir.2010) (same).
Fuller has failed to identify any reason why the term “knowingly,” as it is used in SORNA, should not be given its typical meaning of requiring only general intent. See George, 386 F.3d at 389 n. 6. Because Fuller was clearly aware that he was required to register and update his *508 registration by virtue of his voluntary agreement to and participation in Missouri’s sex offender registration scheme, his failure to register upon his interstate travel, with either New York or Missouri authorities, was a knowing act, see Bryan, 524 U.S. at 192-93, 118 S.Ct. 1939, and was therefore sufficient to sustain the indictment for violating SORNA, see 18 U.S.C. § 2250(a); cf. Gould, 568 F.3d at 468.
C. Fuller’s Remaining Arguments
Fuller advances several additional arguments that require only brief consideration. First, he argues that his conviction violates the Ex Post Facto Clause. Since we hold that SORNA applied to Fuller upon its enactment, this argument is foreclosed. See Guzman, 591 F.3d at 94 (holding that, where a SORNA defendant’s “travel and failure to register occurred after SORNA’s enactment and the effective date of the [Act],” there is “no ex post facto problem” (emphasis added)).
Additionally, Fuller argues that his conviction was improper because (1) SORNA exceeds Congress’s Commerce Clause authority; (2) SORNA violates the non-delegation doctrine; (3) SORNA cannot be applied to him because neither Missouri nor New York had implemented SORNA at the time of his conviction, as directed by the Act; and (4) he was never specifically notified of SORNA’s requirements and applicability to him. These challenges to SORNA have been considered by this Court and rejected, see id. at 90-93; United States v. Hester, 589 F.3d 86, 92-93 (2d Cir.2009), and thus are foreclosed on this appeal.
CONCLUSION
For the foregoing reasons, we conclude that Fuller’s conviction under 18 U.S.C. § 2250(a) was proper. The judgment of the district court is hereby AFFIRMED.

. Our sister Circuits have reached diverging results on the question before us. Broadly speaking, certain Circuits have held that SORNA did not apply to pre-SORNA sex offenders until the Attorney General so declared in the Interim Ruling, see, e.g., United States v. Cain, 583 F.3d 408, 414-19 (6th Cir.2009); United States v. Hatcher, 560 F.3d 222, 226-29 (4th Cir.2009); United States v. Madera, 528 F.3d 852, 857-59 (11th Cir.2008), while other Circuits have held that SORNA's registration requirements applied to pre-SORNA sex offenders upon the date of enactment, see, e.g., United States v. DiTomasso, 621 F.3d 17, 25 (1st Cir.2010); United States v. Hinckley, 550 F.3d 926, 929-35 (10th Cir.2008); United States v. May, 535 F.3d 912, 915-19 (8th Cir.2008).

. Subsection (d), as enacted by Congress, is entitled "Initial registration of sex offenders unable to comply with subsection (b) of this section.” Although the title of a section of a statute does not control the meaning of the text, it may nevertheless be useful in guiding our interpretation. See Xiao Ji Chen v. U.S. Dep’t of Justice, 471 F.3d 315, 325 (2d Cir.2006); see also 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47:3, at 289 (7th ed. 2007) ("Where the title throws light on the meaning of the statute itself, it is an available [interpretive] tool....”). While not dispositive, the title of subsection (d) supports our view that Congress did not intend to grant the Attorney General the sole power to determine SORNA's criminal scope, since we do not believe that it would have nestled such an awesome authority under so inapt a heading.