**STATE of Missouri, Respondent,**

v.

**Keith A. YOUNGER, Appellant.**

**No. WD 74675.**

Missouri Court of Appeals, Western District.

Nov. 6, 2012.

Application for Transfer to Supreme Court Denied Dec. 18, 2012.

Karen L. Kramer and Terrence Messonnier, Jefferson City, MO, for respondent.

Scott C. Hamilton, Lexington, MO, for appellant.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

## CYNTHIA L. MARTIN, Judge.

Keith Younger ("Younger") appeals his conviction for failing to register as a sex offender and argues that there was insufficient evidence to establish each of the essential elements of the offense beyond a reasonable doubt. Specifically, Younger argues that there was insufficient evidence to establish that he was required to register as a sex offender, that he had changed his residence, or that he acted with knowledge. We disagree and affirm.

### Factual and Procedural History

Younger was charged by information with the class D felony of failing to register a change of address in violation of sections 589.414 and 589.425.[1] Younger was accused of knowingly failing to advise the Lafayette County Sheriff's Department of a new residence address within ten days of moving. After a bench trial on November 4, 2011, Younger was convicted. Younger challenges the sufficiency of the evidence to support his conviction.

Viewed in the light most favorable to the verdict,[2] the evidence at trial established that Younger was convicted on October 31, 1994 of sodomy in Jackson County, Missouri. The date of his offense was October 11, 1981, and the victim was his then eight-year-old step-daughter.

Younger first registered as a sex offender in Lafayette County in 1998.[3] The record reflects that Younger thereafter updated his registration every ninety days as required by law.

On July 14, 2010, Younger reported a new work address to the Lafayette County Sheriff's Department. The form completed in connection with this report showed Younger's residence address as 200 West 20th Street, Higginsville, Missouri, and showed a new work address at 28679 152nd Trail, Grant City, Worth County, Missouri. At the time Younger reported his new work address, he advised Officer John Davis ("Officer Davis"), a deputy with the Sheriff's Department, that he was going to be working for his ex-wife, Debra Younger,[4] "doing odds and ends."

1. All statutory references are to RSMo 2000 as supplemented unless otherwise noted. Sections 589.414 and 589.425 are a part of Missouri's Sex Offender Registration Act ("SORA") found at sections 589.400 through 589.426. SORA is also known as "Megan's Law."

2. In a criminal case, we view the evidence in the light most favorable to the verdict. *State v. Perry,* 275 S.W.3d 237, 242 (Mo. banc 2009).

3. Missouri first adopted a version of Megan's Law in 1994, effective on January 1, 1995. Sections 566.600 to 566.625. The current codification of Megan's Law was enacted in 1997.

4. In the record, Younger's ex-wife's first name is spelled "Debra" and "Deborah." We use the spelling as it appears on the referenced registration form.

At or around the same time, the Missouri Highway Patrol sent Younger a letter by certified mail to his registered residence address at 200 West 20th Street. The letter was a reminder that Younger needed to report to his local sheriff's department in August, the month of his birth.[5] The metered postage on the envelope indicates the letter was mailed on July 22, 2010. The letter was returned undelivered on July 30, 2010, labeled "Return to sender/Not deliverable as addressed/Unable to forward."

The Missouri Highway Patrol notified the Lafayette County Sheriff's Department of its unsuccessful attempt to contact Younger by mail. The Sheriff's Department contacted the Higginsville police department and asked it to investigate Younger's registered residence. Officer Tom Long ("Officer Long") testified that he went by the residence to "determine if [Younger] was there or any evidence that he had been living there." When Officer Long went by the residence, no one came to the door. There were no vehicles present, the yard had not been maintained, and the property appeared to be in disarray. Officer Long reported his observations to Lieutenant Randy Florence ("Lieutenant Florence") with the Lafayette County Sheriff's Department.

In response, Lieutenant Florence contacted the authorities in Worth County to see if Younger had registered there. He was advised that no one by Younger's name was registered in Worth County as a sex offender. Lieutenant Florence reported his findings to the Lafayette County prosecutor's office. A warrant was issued for Younger's arrest on September 9, 2010.

Lieutenant Florence testified that Younger was next required to appear for a ninety day status report on October 14, 2010. Younger did appear on that date,

and again reported that his residence address was 200 West 20th Street in Higginsville. Younger was arrested on the outstanding warrant.

The evidence at trial also included the testimony of Sherry Tieman ("Tieman"), a city collector for the City of Higginsville. She testified that Debra Younger had an account for utilities with the city for the address at 200 West 20th Street. In June 2010, the utilities at the 200 West 20th Street address were turned off for nonpayment. On June 23, 2010, someone paid the outstanding utility bills, but did not pay a reconnect fee, so utilities to the address remained turned off. The utilities were not reconnected until November 2010 when Younger paid a deposit and put the utilities into his name. Tieman testified that after that point, the monthly water usage at the address has registered "zero," and the monthly electrical usage has been very low.

The trial court found Younger guilty of the class D felony of failing to register as a sex offender pursuant to SORA. Younger was sentenced to four years imprisonment in the Department of Corrections with execution of sentence suspended. Younger was placed on five years' probation.

Younger filed this timely appeal.

## Standard of Review

"The standard of review for a challenge to the sufficiency of the evidence is the same in both court-tried and jury-tried cases." *State v. Almaguer,* 347 S.W.3d 636, 639 (Mo.App. E.D.2011) (citing *State v. McGinnis,* 317 S.W.3d 685, 686 (Mo. App. W.D.2010)). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict and disregard all contrary evidence and inferences. *State v. Clemons,* 946

---

**5.** This offender registration requirement is described in section 589.414.4.

S.W.2d 206, 216 (Mo. banc 1997). We then assess whether the favorable evidence and inferences therefrom are sufficient for a reasonable fact-finder to find each of the essential elements of the offense beyond a reasonable doubt. *State v. Johnson,* 354 S.W.3d 627, 635 n. 8 (Mo. banc 2011). A defendant's constitutional right to due process is violated if a criminal conviction is entered upon evidence that is insufficient to establish guilt beyond a reasonable doubt as to each of the essential elements of a charged offense. *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### Analysis

In his single point of appeal, Younger argues that the trial court erred in overruling his motion for judgment of acquittal, and by finding him guilty, because there was insufficient evidence to support his conviction of failure to register a change of address in violation of section 589.414 and section 589.425. Specifically, Younger alleges that there was insufficient evidence that he was a person required to register, that he had changed his residence, or that he acted knowingly, each of which were essential elements of his offense. We disagree.

### The Essential Elements of Younger's Offense

Section 589.400.1 provides that "Sections 589.400 to 589.425 [6] shall apply to: (1) "Any person who, since July 1, 1979, has been ... convicted of ... any offense of chapter 566, RSMo, where the victim is a minor...." Section 589.400.2 provides that any person to whom SORA applies shall "within three days of conviction, release from incarceration, or placement upon probation, register with the chief law enforce-

ment official of the county ... in which such person resides...."

The initial registration required by section 589.400.2 is satisfied by completing an offender registration form developed by the Missouri State Highway Patrol. Section 589.407.1. The form requires an offender to provide a variety of detailed information, including, without limitation "the crime which requires registration." Section 589.407.1(1). In addition to completing the initial registration form, any sex "offender who is registered for a crime where the victim was less than eighteen years of age at the time of the offense" is required to "report in person to the chief law enforcement agency every ninety days to verify the information contained in their statement made pursuant to section 589.407." Section 589.414.3(2).

If information reported by an offender changes, section 589.414 requires the offender to notify the appropriate authorities. Of relevance to this case, section 589.414.1 requires:

> Any person required by sections 589.400 to 589.425 to register shall, not later than three business days *after each change of* name, *residence within the county* ... *at which the offender is registered, employment,* or student status, *appear in person to the chief law enforcement officer of the county* ... *and inform* such officer *of all changes* in the information required by the offender.

(Emphasis added.) In addition, section 589.414.2 provides in pertinent part that:

> If any person required by sections 589.400 to 589.425 to register *changes such person's residence or address to a different county* ..., the person *shall*

---

6. We refer to these statutory provisions collectively as "SORA," though we observe

SORA also includes section 589.426.

*appear in person and shall inform both* the chief law enforcement official with whom the person last registered and the chief law enforcement official of the county ... having jurisdiction over the new residence or address in writing within three business days of such new address....[7]

(Emphasis added.)

Section 589.425 provides in relevant part that:

A person commits the crime of failing to register as a sex offender when the person is required to register under sections 589.400 to 589.425 and *fails to comply with any requirements* of sections 589.400 to 589.425.

Section 589.425.1 (emphasis added). Section 589.425 does not specify a requisite mental state. However, section 562.021.3 provides that:

[I]f the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if the person acts purposefully or knowingly.

■ Younger was charged with a violation of section 589.425 predicated upon his failure to report a change of residence as required by section 589.414. Reading the aforesaid statutory provisions collectively, the State was thus required to prove the following essential elements of Younger's charged offense beyond a reasonable doubt: (1) that Younger had been convicted of an offense that required him to register as a sex offender in Lafayette County; (2) that Younger changed his registered residence; and (3) that Younger knowingly failed to inform the Lafayette County Sheriff's Department of his change in residence within three business days.

Younger challenges the sufficiency of the evidence to establish each of these essential elements. We address the essential elements in turn.

### Younger's Obligation to Register as a Sex Offender

The State introduced three registration forms into evidence as a collective exhibit. The forms were (i) a Missouri Offender Registration Change of Address form ("Change of Address"), (ii) a Missouri Offender Registration Statement Supplement form ("Supplement"), and (iii) a Missouri Offender Registration Notification/Statement form ("Notification"). All three forms were completed by or for Younger on July 14, 2010. The Supplement and Notification forms were signed by Younger.

Each of the forms includes a category described as "Offense Information" which describes that Younger was convicted on October 31, 1994 of sodomy for an offense that occurred on October 11, 1981, involving a white, female, eight year-old, victim who was Younger's stepdaughter. The "modus operandi" is described on each form as molestation.

The Supplement and Notification forms were necessitated by Younger's obligation under section 589.414.3(2) to appear in person to confirm the accuracy of his information every ninety days, as his offense involved a person under the age of eighteen years. The Change of Address form was necessitated by Younger's obligation under section 589.414.1 to report a change in employment.

In addition to the Offense Information contained in the aforesaid forms, Lieutenant Florence testified that Younger was required to register as a sex offender in

---

**7.** Section 589.414.2 also requires an offender to notify the appropriate authorities if he changes his residence to a different state.

Lafayette County because he had been found guilty of, or pled guilty to, sodomy in Jackson County, Missouri in January 1994, and that the offense involved a victim under the age of 14 years.[8] Lieutenant Florence also testified that Younger had been registered as a sex offender in Lafayette County since 1998, and thereafter reported for required status updates every ninety days.

■ The State's evidence at trial was sufficient to establish that Younger was required to register as a sex offender, and thus to comply with the registration requirements set forth in section 589.414.[9] The statutorily proscribed offender registration forms are required to set forth "the crime which requires registration." Thus, the "Offense Information" on the registration forms received in evidence necessarily referred to the offense which required Younger to comply with the requirements of SORA. In addition, the evidence included testimony that Younger registered in Lafayette County in 1998, and reported for status updates as required every ninety days thereafter. The trial court was entitled to draw the reasonable inference from Younger's conduct that Younger acknowledged an obligation to abide by the registration requirements set forth in SORA.

The evidence permitted the trial court as the fact-finder to conclude beyond a reasonable doubt that Younger was obligated to register as a sex offender and to thereafter abide by the notification requirements set forth in SORA.

### Younger's Change of Residence

Section 589.414 requires an offender to notify the chief law enforcement officer in the county where he was last registered of any change in residence within the same county (section 589.414.1), or to another county (section 589.414.2). The word "residence" is not defined in SORA. The phrase "change of residence" is similarly not defined. Younger argues that the phrase "change of residence" should be construed to require the State to prove that an offender has left a registered residence with no intent to return. The State argues that the word "residence" should be defined to mean both the place where a person actually lives and a place a person intends to return to live, a definition which could require an offender to register at

8. Though Younger asserts in his brief that this testimony went only to Lieutenant Florence's state of mind, and did not establish the truth of the assertions, we disagree. The testimony was not so limited, and no objection to the testimony was asserted. It is clear from our reading of the transcript that Lieutenant Florence was reporting as "fact" the particulars of Younger's prior conviction. Though the testimony was elicited to explain how and why Lieutenant Florence was familiar with Younger, that context does not diminish the import of the testimony as a basis from which a fact-finder could conclude that Younger had been convicted of an offense of a sexual nature involving a minor which required registration.

9. In *Doe v. Phillips*, 194 S.W.3d 833 (Mo. banc 2006), our Supreme Court held that applying the registration requirements of Megan's Law to "persons who were convicted or pled guilty prior to the law's January 1, 1995 effective date" and "based solely on [the person's] pre-act criminal conduct" is unconstitutionally retrospective in application in violation of Mo. Const. art. I, sec. 13. *Id.* at 852. However, in *Doe v. Keathley*, 290 S.W.3d 719 (Mo. banc 2009), our Supreme Court held that Missouri law can lawfully provide that persons required to register under federal law are also subject to registration under Missouri law. Section 589.400.1(7) provides that the registration requirement applies to "[a]ny person who is a resident of this state who ... is required to register under tribal, federal, or military law...." This provision thus makes offenders subject to State criminal prosecution under section 589.425. *See State v. Boeji*, 352 S.W.3d 625, 628 (Mo.App. S.D.2011); *Doe v. Lee*, 296 S.W.3d 498, 499–500 (Mo. App. E.D.2009). Younger has not questioned the constitutional application of SORA's registration requirements to his 1994 conviction.

more than one address if the offender has both a primary and a temporary residence. The State thus argues that a "change of residence" is any change in the permanent or temporary registered residences reported by an offender.

Statutory construction presents a question of law. *City of St. Joseph v. Vill. Of Country Club*, 163 S.W.3d 905, 907 (Mo. banc 2005). "The goal of statutory analysis is to ascertain the intent of the legislature, as expressed in the words of the statute." *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 909–10 (Mo. banc 2006). We need not resort to rules of statutory construction to ascertain legislative intent if the language of a statute is clear and unambiguous. *Maxwell v. Daviess Cnty.*, 190 S.W.3d 606, 610 (Mo.App. W.D.2006). Our first step, therefore, is to read section 589.414 in its "plain, ordinary, and usual sense." *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996); section 1.090 (providing that "[w]ords and phrases shall be taken in their ordinary and usual sense"). In so doing, if a word or phrase is employed in a statute but is not defined by the legislature, we afford the word or phrase its "plain and ordinary meaning, as typically found in the dictionary." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009). Moreover, "[t]he meaning of a word must depend to some extent on the context in which it appears." *Id.*

The word "residence" is used in both sections 589.414.1 and 589.414.2. Section 589.414.1 addresses an offender's "change of ... residence within the county ... at which the offender is registered." Section 589.414.2 addresses an offender's "change[ ] ... [of] residence or address to a different county."[10] In both cases, the

word "residence" is used in connection with describing a statutory trigger for an offender's obligation to notify authorities of a change in previously reported information. We must determine, therefore, the intended meaning of the word "residence" mindful of this context.

The word "residence" is defined in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1993, p. 1931 as:

> [T]he act or fact of abiding or dwelling in a place for some time: an act of making one's home in a place....

> [T]he place where one actually lives or has his home as distinguished from his technical domicile[.] [A] temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit.

Simply stated, the plain and ordinary meaning of "residence" is the place where one actually lives or dwells and is distinguishable from a transient or temporary visit to a location. And "residence" is distinguishable from a person's domicile, separately defined as "the place with which a person has a settled connection for important legal purposes." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1993, p. 671.

When we incorporate this plain meaning of the word "residence" into the phrase "change of residence" in the context of an offender's obligation to report, we necessarily conclude that the obligation to report a change of residence encompasses an obligation to report any temporary or permanent change in the place where an offender is actually living or dwelling. Applied to this case, Younger was obligated to report a change in his

---

**10.** As previously noted, section 589.414.2 also addresses an offender's change of residence to a different state.

residence if the evidence established that for a period of time he was not actually living or dwelling at the registered address of 200 West 20th Street in Higginsville.

We are aware of the authorities cited by Younger in support of the proposition that the phrase "change of residence" should be narrowly read to require abandonment of the offender's registered residence with no intent of returning. However, we do not agree with Younger's interpretation of these authorities. In *U.S. v. Van Buren,* 599 F.3d 170 (2nd Cir.2010), an offender objected to a jury instruction because the instruction permitted the jury to find a "change of residence" if it found that "the defendant left the residence listed in the registry with no intention of returning," even if the defendant had not "established a new residence." *Id.* at 173. The offender argued that the jury instruction should have required the jury to find that he had established a new residence. *Id.* On these facts, and based on the particular jury instruction before it, the court concluded that "SORNA[11] requires a convicted sex offender to update his registration information in person upon terminating his current residence with no intention of returning, even if the sex offender has not yet established a new residence." *Id.* at 175. This holding can hardly be read as an exclusive elucidation of the circumstances constituting a "change of residence" triggering an obligation to report. At best, *Van Buren* simply holds that a "change of residence" includes a situation where an offender permanently leaves a registered residence even if the offender has not yet established another residence.

In *State v. Kelly,* 367 S.W.3d 629 (Mo. App. E.D.2012), our Eastern District addressed a similar scenario. An offender left his registered residence with no intent

to return and was transient for three months with no fixed address. *Id.* at 630–31. The offender was convicted of violating SORA because he failed to update his residence information as required by section 589.414. *Id.* at 630. The offender argued that he had not "changed" his residence in the manner anticipated by section 589.414 because he had not established a new residence. *Id.* at 631. The State argued that once the offender left his registered residence with no intention of returning, he had "changed" his residence, whether or not he had a new residence. *Id.* The Eastern District, citing *Van Buren,* held that "[w]hen a sex offender leaves a residence with no intention to return, even if he leaves to become homeless, his residence has *changed* as it is no longer that of the original residence." *Id.* at 632 (emphasis in original). As with *Van Buren,* the court in *Kelly* was not asked to define the outer limits of an offender's obligation to report a change in residence, but was asked only to determine whether leaving a residence with no intent to return and without establishing a new residence was sufficient to trigger an obligation to report.

We thus reject Younger's assertion that the legislature intended to limit the reporting obligations described in section 589.414 to circumstances where an offender leaves a registered address *with no intent to return.* We conclude that "change of residence" also includes within its scope any time an offender is not actually living or dwelling at a registered address, regardless the intent to return. Not only does the plain meaning of "residence" command our conclusion, SORA's clear purpose commands our conclusion. The purpose of SORA is to "protect chil-

---

11. The Federal Sex Offender Registration and Notification Act, known as "SORNA" is found at 42 USCA section 16901, *et. seq.*

dren from violence at the hands of sex offenders" and "to respond to the known danger of recidivism among sex offenders." *Doe v. Phillips*, 194 S.W.3d 833, 839 (Mo. banc 2006) (citations omitted). That purpose is not served by permitting offenders to shield themselves from reporting a change of residence merely because the offender can claim he has the intent to return to a registered residence. SORA's purpose is only served if we construe "change of residence" to require sex offenders to notify appropriate law enforcement officials anytime they are no longer actually dwelling at a registered residence, whether temporarily or permanently. Common sense and the plain meaning of "residence" suggest that the focus of determining whether a "change of residence" has occurred should not be on the offender's intent to return, but instead on whether there has been a change in the location where the offender is actually dwelling.

■ Here, of course, the record does not establish where Younger was otherwise actually living, though it suggests that Younger *may* have been actually living in Grant City in Worth County. But where Younger was otherwise actually living is of no import. Younger was not, and could not have been, charged by the Lafayette County authorities for failing to register in *Worth* County. He was charged with failing to notify the authorities in Lafayette County that he had changed his residence from (i.e. that he was not actually living at) the registered residence of 200 West 20th Street in Higginsville, Lafayette County. The evidence

was sufficient to establish that at the time Younger was charged, Younger was not *actually* living or dwelling at that address. That evidence included the observations of Officer Long about the condition of the property, the testimony by Lieutenant Florence that Younger told him he would be working in another county, and the testimony of Tieman about utility usage at the property. Younger does not argue that this evidence was insufficient to support a conclusion that he "changed his residence" given our construction of the meaning of that phrase.

Younger does argue that the evidence could also have supported the conclusion that he was merely working in another county and never abandoned the address in Higginsville as his residence. This argument, however, ignores that our standard of review requires us to view the evidence in the light most favorable to the verdict, and to disregard contrary evidence and inferences. *Clemons*, 946 S.W.2d at 216. The evidence plainly supported the conclusion that Younger changed his residence, as we construe that phrase.[12] Younger was obligated to notify the Lafayette County authorities that for some period of time, he was not actually living or dwelling at his registered residence.[13]

The evidence permitted the trial court as the fact-finder to conclude beyond a reasonable doubt that Younger had changed his residence and was obligated by SORA to notify the Lafayette County authorities.

12. As in *Kelly* and *Van Buren*, we have not attempted to define the outer parameters of the meaning of the phrase "change of residence," but have concluded only that the scenario presented by the facts in this case falls within the legislature's intended meaning of the phrase.

13. As we construe section 589.414, Younger had the obligation to notify Lafayette County authorities of a change of residence if he had not established another residence (*Kelly*, 367 S.W.3d at 631), if he had established another residence in Lafayette County (section 589.414.1), or if he had established another residence in a different county or in a different state (section 589.414.2).

### Younger's Knowing Failure to Notify

 Younger argues that there was insufficient evidence to establish that he knowingly failed to comply with SORA's notification requirements. We disagree.

Section 562.021.3 provides in pertinent part that a person "acts knowingly ... when he is aware of the nature of his conduct. . . ." Younger argues that because he gave the Lafayette County authorities his new work address in Grant City, he could not be found to have "knowingly" failed to notify the authorities that he had changed his residence. He essentially argues that the authorities knew where to find him.

Younger's argument is unavailing. If anything, Younger's notification of the authorities of his change in work address, and his twelve year history of timely reporting for ninety-day status reports, is demonstrative of Younger's knowledge of his obligations under SORA, and specifically under section 589.414. Younger's reporting of a new work address may very well have made it easier for the Lafayette County authorities to find him after they learned the certified letter from the Missouri Highway Patrol had been returned. That he was easy to find does not negate Younger's statutory obligation to notify the authorities that he changed not only his work address, but also his residence address.

 Here the "knowingly" *mens rea* attached to whether Younger "knowingly" changed his residence and "knowingly" failed to notify the authorities. It did not attach to whether he knowingly broke the law. Section 562.031.1. Clearly, there was sufficient evidence presented at trial from which the trial court could have concluded beyond a reasonable doubt that Younger knew he changed his residence and knew he failed to report the change to the authorities.

Younger's point is denied.

### Conclusion

The trial court's judgment convicting Younger of the class D felony of failing to register as a sex offender in violation of sections 589.414 and 589.425 is affirmed.

All concur.