*Andre Jerome Hammond v. State of Maryland*, No. 0615, Sept. Term, 2024. Opinion by Kehoe, S., J.

**CRIMINAL LAW – JURISDICTION AND PROCEEDINGS FOR REVIEW – PRESERVATION OF ERROR**

An appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court. Md. Rule 8-131(a). To preserve an issue, there must be an objection, the objection must appear on the record, and the objection must be accompanied by a definite statement of the ground for objection unless the ground for objection is apparent from the record. Without a contemporaneous objection or expression of disagreement, the trial court is unable to correct, and the opposing party is unable to respond to, any alleged error in the action of the court. What is important is that the parties and the trial court had notice of the issue and a chance to address that issue.

The issue was preserved when defense counsel objected and argued the issue in a motion for judgment of acquittal and in closing argument, the trial court was afforded an opportunity to correct the alleged error, and expressly declined to do so. The trial court was put on notice of the issue and had ample opportunity to address it, so the issue is preserved.

**MENTAL HEALTH – DISABILITIES AND PRIVILEGES OF MENTALLY DISORDERED PERSONS – CRIMES – REGISTRATION AND COMMUNITY NOTIFICATION – DEFINITIONS – "KNOWINGLY"**

Md. Code Ann., Crim. Proc. Art § 11-721 states that a registrant may not "knowingly" fail to register as required by the statute. CP § 11-721(a). Penalties for knowingly failing to register include fines and imprisonment not exceeding five years. CP § 11-721(b).

The defendant did not timely register but claimed that he could not be convicted for knowingly failing to register because he "forgot," which he argued negated his mental state of "knowingly." The trial court rejected the defendant's argument and instead found that the defendant had prior notice of his duty to register, as evidenced by his history of timely registering and prior conviction for failing to register. In rendering the judgment, the trial court acknowledged the extenuating circumstances that inhibited the defendant from remembering his duty to register, including defendant's struggles with his mental health, though the trial court did not feel that those facts necessarily precluded a conviction. The defendant was convicted and sentenced to five years unsupervised probation, with the recommendation that he continue to seek mental health treatment.

The trial court did not err in concluding that defendant's claim that his depression made him forget to remember to register as a sex offender did not negate the "knowingly"

element of the offense and was not a defense to the charge of failure to register as a sex offender under CP § 11-721.

Circuit Court for Charles County
Case No. C-08-CR-23-000605

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0615

September Term, 2024

_____

ANDRE JEROME HAMMOND

v.

STATE OF MARYLAND

_____

Nazarian,
Kehoe, S.,
Raker, Irma S.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Kehoe, J.

_____

Filed: January 30, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises following a bench trial in the Circuit Court for Charles County before the Honorable William R. Greer, Jr. ("Judge Greer") where Appellant, Andre Jerome Hammond ("Mr. Hammond"), was convicted of knowingly failing to register as a sex offender in violation of Section 11-721 of the Criminal Procedure Article.[1]

Around the time of Mr. Hammond's re-registration date, he was grieving the loss of many family members and suffering from a worsening depression. On August 1, 2023, his registration deadline, Mr. Hammond attended the funeral of a family member with whom he had a very close relationship, and he "just forgot, literally." Mr. Hammond was charged with the violation two weeks later. Mr. Hammond's trial took place on April 30, 2024. At trial and now on appeal, the parties dispute whether a defendant who forgets to timely register due to extenuating circumstances can be convicted under CP § 11-721. Judge Greer acknowledged Mr. Hammond's hardships but determined that Mr. Hammond knew of his duty to register, failed to do so, and thus, violated the statute. Judge Greer sentenced Mr. Hammond to five years of incarceration, all suspended, and placed him on five years of unsupervised probation, with the instruction that Mr. Hammond continue to seek mental health support.

Mr. Hammond presented one question for our review: "Did the trial court err in convicting Mr. Hammond of knowingly failing to register under the Maryland sex offender registration act after finding as a fact that extenuating circumstances caused him

_____

[1] Md. Code Ann., Crim. Proc. Art. ("CP") § 11-721.

to forget to register?" For the reasons we explain below, we affirm Mr. Hammond's conviction and the judgment of the circuit court.

## BACKGROUND

Mr. Hammond was convicted on August 26, 2009 for misdemeanor sexual abuse and on February 6, 2018 for second degree child sexual abuse under Sections 22-3006 and 22-3009 of the D.C. Code.[2] When Mr. Hammond moved to Maryland, he was classified as a Tier I sex offender and required to comply with CP § 11-701 through CP § 11-721. As a Tier I sex offender, Mr. Hammond was required to report to the appropriate supervising authority and register with the State every six months. *See* CP § 11-707. Detective Nina Garner ("Det. Garner"), the supervising authority in Charles County, described the registration process as follows:

> [T]he offender comes in, makes contact with the clerk, they'll come in to an office downstairs in the lobby and they'll sit across from me. I take their photograph, which is updated later into a database . . . . Their registration form which has all their demographic, conviction information, offense date, address, employment, vehicles, Internet identifier, social media accounts, Email addresses, everything that they're required to report to the registry is on that form. They go over the form, attest that it's true and accurate. They'll sign and date the front page. If they have any changes, obviously we make those, and that is written on that form. Like I said, once they verify that everything is true and accurate, they sign and date and then I also write my name and date . . . . They initial and date, I initial and date, right there together. The last page is a requirements form, which is an outline of all the

---

[2] [The Washington,] D.C. Code §§ 22-3006, 22-3009; Maryland Department of Public Safety and Correctional Services, Maryland Sex Offender Registry, Offender Search: Andre Jerome Hammond https://www.icrimewatch.net/offenderdetails.php?OfndrID=8451877&AgencyID=56622 (last accessed Dec. 4, 2025).

requirements through the State sex offender registry that they are required to abide by[.]

Det. Garner explained that in Charles County, registrations occur on the first or third Tuesday of every month. She testified that Mr. Hammond's last registration date was February 9, 2023, six months later would be August, and the first Tuesday fell on August 1, 2023. As such, Mr. Hammond was required to register on that date. On August 14, 2023, Det. Garner filed a warrant for Mr. Hammond's arrest after he missed his August 1st registration date and she had not heard from him. Upon receiving notice of the warrant, Mr. Hammond took several steps in an attempt to comply with the registration statute. At trial, Det. Garner testified about her interactions with Mr. Hammond on August 16, 2023:

> [DEFENSE COUNSEL]: So he called at around 3:11, 3:13, and then [s]ent an [e]mail at 5, around 5?
>
> [DET. GARNER]: Yes.
>
> [DEFENSE COUNSEL]: On the 16th?
>
> [DET. GARNER]: Yes.
>
> [DEFENSE COUNSEL]: When he found out he had that warrant?
>
> [DET. GARNER]: Yes.
>
> [DEFENSE COUNSEL]: And he informed you that he had all those deaths in the family?
>
> [DET. GARNER]: Yes.
>
> [DEFENSE COUNSEL]: And his mental health, he was mentally drained at that point, correct?
>
> [DET. GARNER]: I can't attest to his mental status, but—
>
> [DEFENSE COUNSEL]: Okay, but he's telling you that, literally?
>
> [DET. GARNER]: He, he's saying he had a death in the family and mental health, yes.
>
> [DEFENSE COUNSEL]: And he's pleading to register, to reschedule that registration?

* * *

[DET. GARNER]: Yes, he wants to come in to register.

Mr. Hammond's sister, Elizabeth Holt ("Ms. Holt"), with whom Mr. Hammond lived, testified as to her perception of her brother's mental state in late July and early August of 2023 after a close relative named Bridgette died by suicide:

[DEFENSE COUNSEL]: Now Bridgette [ ] do you know when she passed away?

[MS. HOLT]: In July, I'm thinking it was on here, July the 17th, of 2023.

[DEFENSE COUNSEL]: Okay. Now as far as you know, how did [Mr. Hammond] handle Bridgette's death?

[MS. HOLT]: Oh, my God, it, he was distraught.

[DEFENSE COUNSEL]: What do you mean by distraught?

[MS. HOLT]: He was literally distraught, he literally fell apart, I mean crying, not eating, not sleeping well. He just was, he was so distraught. His mindset just wasn't there, mind wasn't there—

[DEFENSE COUNSEL]: I'm sorry to do this, I just—

(Witness crying)

Mr. Hammond also testified in his own defense:

[DEFENSE COUNSEL]: [H]ave you ever registered?

[MR. HAMMOND]: Yes.

[DEFENSE COUNSEL]: How many times have you registered?

[MR. HAMMOND]: I registered in the District of Columbia, I registered in Falls Church, in Arlington, Virginia. I registered in [Prince George's] County twice and I registered in Charles County now.

[DEFENSE COUNSEL]: Okay, so you've registered in at least four locations prior to Charles County?

[MR. HAMMOND]: Yes.

[DEFENSE COUNSEL]: Okay, so you understand the importance of registering and following the policies in place?

[MR. HAMMOND]: Yes.

4

[DEFENSE COUNSEL]: Okay. Where were you required to register in August of 2023?

[MR. HAMMOND]: In Charles County.

[DEFENSE COUNSEL]: What happened?

[MR. HAMMOND]: I forgot.

[DEFENSE COUNSEL]: Okay, what was going on in your life around August 2023 that caused you to forget?

[MR. HAMMOND]: I was severely going through my mental health problems of depression that I was dealing with family deaths, step-father, two murder cases of my two nephews, two murder cases of my cousin, then another cousin that was dealing with mental health committed suicide that I was close to very dearly, so.

It was undisputed from the testimony that Mr. Hammond forgot to register or reschedule his appointment due to extenuating circumstances. It was also undisputed that as soon as Mr. Hammond became aware of his mistake, upon receiving notice of the warrant out for his arrest, he took several measures in an attempt to comply with the registration statute, including calling Det. Garner several times, leaving a voicemail, sending an email, and showing up in-person and refusing to leave until he was registered. In articulating its reasoning for its decision, the court noted: "It's difficult to imagine that you couldn't—didn't have the memory to register in this case. Maybe you missed a day, maybe you missed a week, but two weeks it becomes a little bit long. And you had to be reminded. So that does cause some concern." After being convicted under CP § 11-721, Mr. Hammond timely appealed. This Court held oral argument on December 1, 2025. Additional facts will be included in the discussion as they become relevant.

5

## DISCUSSION

This is a pure "I forgot" case. We reject it as a defense.

### I.       Parties' Contentions

Mr. Hammond argues that the trial court erred in convicting him of knowingly failing to register under the Maryland Sex Offender Registration Act ("MSORA") after finding as a fact that extenuating circumstances caused him to forget to register. Mr. Hammond argues that "knowingly" requires more than just a showing of prior notice. Rather, Mr. Hammond argues, we should assess whether an offender knowingly failed to register, *at the time they failed to register*. Mr. Hammond suggests that while prior notice may allow an inference of actual knowledge, this inference can be negated by evidence that the offender forgot. If "knowingly" is ambiguous, Mr. Hammond argues, the rule of lenity compels that the word be construed in the light most favorable to him, as the defendant, such that knowledge of one's legal obligations is not conflated with knowledge that one is failing those obligations.

Mr. Hammond argues that the trial court found as a fact that Mr. Hammond forgot to register, and thus, was precluded from convicting Mr. Hammond of knowingly failing to register. Mr. Hammond points to *State v. Mikaluk*, 903 N.W.2d 600 (Minn. 2017), for the proposition that while a temporary memory lapse may not negate what someone once knew, it does negate any contemporaneous knowledge or awareness of their conduct at the time of the violation. Therefore, the trial court's finding that Mr. Hammond was, as of the time that he failed to register, in a mental state of "forgetting," signals that Mr. Hammond could not have been in a mental state of "knowing."

6

The State argues that Mr. Hammond did not preserve this issue for appellate review. The State relies on *Chisum v. State*, 227 Md. App. 118 (2016), where this Court held that the issue (whether the judge's reliance on a factual finding was erroneous) was not adequately preserved because defense counsel did not focus their defense on the issue. Here, the State contends defense counsel urged the trial court to take pity on Mr. Hammond and acquit him based on the circumstances. The State also contends that Mr. Hammond failed to resolve what he now alleges to be a discrepancy between the trial court's factual findings and its ultimate legal conclusion. On the merits, the State argues that Mr. Hammond did knowingly fail to register because he was appropriately advised of his duty to register, failed to do so, and there was no intervening event that rendered him incapable of remembering his obligation. The State argues that the trial court effectively communicated that even if Mr. Hammond failed to re-register because he forgot, it nonetheless was not inclined to accept that as a defense against the knowing requirement of the offense.

## II.     Applicable Law

### A.     <u>Preservation</u>

"Ordinarily, an appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" Md. Rule 8-131(a). To preserve an issue, there must be an objection, the objection must appear on the record and the objection must be accompanied by a definite statement of the ground for objection unless the ground for objection is apparent from the record. *See Robinson v. State*, 209 Md. App. 174, 199–200 (2012). Limiting appellate review to

7

preserved issues "is a matter of basic fairness to the trial court and to opposing counsel, as well as being fundamental to the proper administration of justice." *In re Kaleb K.*, 390 Md. 502, 513 (2006) (quoting *Medley v. State*, 52 Md. App. 225, 231 (1982)). "Without a contemporaneous objection or expression of disagreement, the trial court is unable to correct, and the opposing party is unable to respond to, any alleged error in the action of the court." *Lopez-Villa v. State*, 478 Md. 1, 13 (2022). An appellant need not use magic words during trial to properly preserve an issue for appeal. *Cox v. State*, 397 Md. 200, 212 (2007). What is important is that the parties and the trial court had notice of the issue and a chance to address that issue. *In re I.Q.*, 264 Md. App. 265, 303 n.5 (2025).

**B.      Statutory Interpretation**

"Interpretation of a statute is a question of law, and, therefore, we review *de novo* the decision of the Circuit Court." *Heffernan v. State*, 209 Md. App. 231, 243 (2012) (citing *Moore v. State*, 388 Md. 446, 453 (2005); *Davis v. Slater*, 383 Md. 599, 604 (2004)); *see also Schisler v. State*, 394 Md. 519, 535 (2006) ("[W]here an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review.").

The "paramount goal of statutory interpretation is to identify and effectuate the legislative intent underlying the statute at issue." *Derry v. State*, 358 Md. 325, 335 (2000) (citing *Robinson v. State*, 353 Md. 683, 694 (1999)). "If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends." *Evans v. State*, 420 Md. 391, 400 (2011). Terms at issue must be examined in

8

"context." *See Kaczorowski v. Mayor & City Council*, 309 Md. 505, 514 (1987) ("The meaning of the plainest language is controlled by the context in which it appears."). "Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language." *Evans*, 420 Md. at 400. "In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments." *Id.* at 400. "If, however, the language is subject to more than one interpretation, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, caselaw, statutory purpose, as well as the structure of the statute." *Id.* at 400–01.

### III. Analysis

#### A. <u>**The Issue is Preserved**</u>

We disagree with the State, and hold that Mr. Hammond sufficiently preserved his issue for appeal. Defense counsel explicitly made the legal argument in a Motion for Judgment of Acquittal, arguing that the State had "proven that this is a violation, he did not register by the expiration date, but [the State] did not prove that this is a knowing violation." The court was afforded an opportunity to correct the alleged error, and in fact declined to do so. In denying the motion, the court stated the following: "I find that in the light most favorable to the State, that there was notice, it was knowing, and the Defendant did not appear." In closing, defense counsel reiterated that Mr. Hammond "did not register, but [that]'s not a knowing failure to register." As such, the trial court was put on notice of the issue and had ample opportunity to address it: the issue is preserved. *See In re I.Q.*, 264 Md. App. at 303 n.5.

9

**B.** **Mr. Hammond Knowingly Failed to Register**

Under MSORA, individuals convicted of certain enumerated sexual offenses are placed into a tiered registration system that determines how often, and for how long, they must register. *See* CP § 11-705. The statute states in relevant part:

> A registrant may not *knowingly* fail to register, *knowingly* fail to provide the notice required under § 11-705 of this subtitle, *knowingly* fail to provide any information required to be included in a registration statement described in § 11-706 of this subtitle, or *knowingly* provide false information of a material fact as required by this subtitle.

CP § 11-721(a) (emphasis added).

The parties disagree over the definition of the word "knowingly" in CP § 11-721(a). We have defined "knowingly" in this context on only one occasion. In *Correll v. State*, we explained that "knowingly" means that the registrant acts with knowledge, i.e., that he *knows* that he *must* register as a sex offender but does not do so. 215 Md. App. 483, 504–05 (2013). "Must" refers to a compulsory future obligation. The gap in time between one's knowledge of and failure to fulfill an obligation, does not nullify knowledge of the obligation. A plain language reading of the *Correll* definition suggests that prior notice is sufficient to establish knowledge under CP § 11-721(a).

Given that the word "knowingly" is not defined in CP § 11-721 nor anywhere else in the Criminal Procedure Article, we look to definitions of "knowingly" elsewhere.

We start with the current version of the Maryland Code, specifically in the Criminal Law Article. *See, e.g.*, Md. Code Ann., Crim. Law Art. ("CR") § 11-201(c) (defining "knowingly" as "having knowledge of the character and content of the matter"); CR § 7-102(b) ("[a] person acts "knowingly[,]" "when the person is aware of the conduct or that

10

the circumstance exists . . . .”). A prior enactment of the Maryland Code also defined "knowingly" in the obscenity context as "having knowledge of the character and content of the subject matter." Md. Code Ann., Art. 27 § 417(4), *repealed by* Acts 2002, c. 26, § 1, *eff.* Oct. 1, 2002. This definition of "knowingly" is relevant because the text of CP § 11-721 (including "knowingly") was previously codified in Art. 27 § 792.

The Model Penal Code ("MPC")[3] states as follows: "A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist, and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result." MPC § 2.202. Subsection (ii) applies because CP § 11-721(a) involves the result of a defendant's conduct (timely registering). *See* MPC § 2.202(ii). Under the last antecedent rule,[4] "knowingly" modifies fail. *See Davis v. State*, 426 Md. 211, 229 n.6 (2012) ("[A] qualifying clause ordinarily is confined to the immediately preceding word or phrase[.]"). Accordingly, the MPC definition of "knowingly" suggests that a defendant acts knowingly when they are aware that it is practically certain that the "act" of not timely registering constitutes a "knowing" failure.

---

[3] The Model Penal Code is a uniform criminal code, and the definitions contained therein are not binding in Maryland. Many states, including Maryland, have codified portions of the MPC and others have interpreted their state laws reflect the MPC. *See, e.g.*, *Young v. State*, 303 Md. 298, 311 (1985) (adopting MPC's "substantial step" test for criminal attempts, noting that twenty-three other states have adopted the MPC test).

[4] We have never adopted the last antecedent rule but treat it as a generally accepted, but not absolute, canon of construction. *McCree v. State*, 441 Md. 4, 21 n.5 (2014).

11

Around the time of the statute's original enactment, the Supreme Court of the United States explained that "the term 'knowingly' merely requires proof of knowledge of facts of the offense[,]" unless the text of the statute dictates a different result. *Bryan v. U.S.*, 524 U.S. 184, 193 (1998). For example, in *Liparota v. United States*, the Court concluded that both the term "knowing" in 7 U.S.C. § 2024(c) and the term "knowingly" in § 2024(b)(1) literally referred to knowledge of the law as well as knowledge of the relevant facts. 471 U.S. 419, 428–30 (1985).

We also review the "ordinary and popular understanding of the word . . . to determine its meaning." *Chow v. State*, 393 Md. 431, 445 (2006). In this exercise, we focus on dictionary definitions that predate the enactment of the statute in question. *See, e.g.*, *Lowery v. State*, 430 Md. 477, 491 (2013) (utilizing the Webster's Dictionary definition of the word "delineation" from the year the statute was originally enacted). The 1989 edition of the Oxford English Dictionary defined the adverb "knowingly" as meaning, "in a knowing manner, with knowledge, intelligently, consciously, and intentionally, etc." *Knowingly*, OXFORD ENGLISH DICTIONARY (2d ed. 1989). Furthermore, in 1990 (prior to the statute's original enactment), BLACK'S LAW DICTIONARY defined "knowingly" as "with knowledge, consciously; intelligently; willfully; or intentionally." *Knowingly*, BLACK'S LAW DICTIONARY 872 (6th ed. 1990). Further, the dictionary provides: "An individual acts 'knowingly' when he acts with awareness of the nature of his conduct." *Id.* Under this definition, "knowingly," as used

12

in CP § 11-721(a), should be construed to require consciousness or awareness at a minimum.[5]

Whether we rely on the Criminal Law Article definition (awareness of circumstance, i.e., obligation to timely register), the MPC definition (practical certainty of what constitutes a violation), the Supreme Court definition (proof of knowledge of facts of the offense), or Black's Law Dictionary definition (consciousness or awareness), the outcome is the same. The record reflects that Mr. Hammond had knowledge of his legal duty to register (awareness of the law) and had knowledge that if he did not register by his next registration date on August 1st, he would be violating the statute (awareness of the relevant facts and circumstances).

This comports with other jurisdictions' recognition that the bar for knowledge is low and awareness suffices. *See Clark v. State*, No. 05-17-01384-CR, 2018 WL 5816879, at *2 (Tex. App. Nov. 7, 2018) (holding that state did not need to prove an additional culpable mental state regarding sex offender's failure to register beyond establishing the offender's awareness of the registration requirement).

To put it plainly, you do not necessarily need to know that you violated CP § 11-721, just that you were supposed to register (aware of your duty) and did not. *See, e.g.*, *State v. Younger*, 386 S.W.3d 848, 858 (Mo. Ct. App. 2012) (affirming sex offender's conviction for failure to register, noting that the "knowingly" *mens rea* attached

---

[5] We do not regard "knowingly" in CP 11-721(a) to reflect the more stringent *mens rea*, "purposefully." As such, we ignore the portions of the dictionary definitions signaling intentionality ("willfully" and "intentionally") and focus on the minimum threshold for knowledge as opposed to the maximum.

13

to whether the offender "knowingly" changed his address and "knowingly" failed to notify the authorities and not to whether he "knowingly" broke the law); *see also Marshall v. Commonwealth*, 708 S.E.2d 253, 255 (Va. Ct. App. 2011) (holding that failure to register does not require "specific intent or purpose" and "an accused knowingly fails to register or reregister in violation of the statute if he has knowledge of the fact that he has a duty to register or reregister, but does not do so.").

In searching for the legislature's intent, a court is also permitted to consider the relative rationality and legal effect of various competing constructions. *See Hailes v. State*, 442 Md. 488, 495–96 (2015). As follows, the language of the statute must be viewed from a commonsensical perspective to avoid a farfetched interpretation. *See Frost v. State*, 336 Md. 125, 137 (1994); *see also Dickerson v. State*, 324 Md. 163, 171 (1991). We have explained that "all parts of a statute are to be read together to find the intention as to any one part, and all parts are to be reconciled and harmonized if possible." *See Wheeler v. State*, 281 Md. 593, 596 (1977), *cert. denied*, *Maryland v. Wheeler*, 435 U.S. 997 (1978) (citing *Thomas v. State*, 277 Md. 314, 317 (1976)).

Even "when the language of a statute is free from ambiguity, in the interest of completeness we may, and sometimes do, explore the legislative history of the statute under review." *Mayor & City Council of Balt. v. Chase*, 360 Md. 121, 131 (2000). "Archival legislative history includes legislative journals, committee reports, fiscal notes, amendments accepted or rejected, the text and fate of similar measures presented in earlier sessions, testimony and comments offered to the committees that considered the bill, and debate on the floor of the two Houses[.]" *In re K.K.*, 266 Md. App. 161, 192 (2025) (citing

*State v. Phillips*, 457 Md. 481, 488 (2018)). Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. *Blue v. Prince George's Cnty.*, 434 Md. 681, 689 (2013) (quoting *Town of Oxford v. Koste*, 204 Md. App. 578, 585–86 (2012), *aff'd*, 431 Md. 14 (2013)). However, we may afford little weight to a bare legislative record that is "not enlightening for the provision pivotal here." *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 963 n.4 (1997).

As stated, Maryland's sex offender registration requirements were previously housed under Section 792 of Article 27 of the Maryland Code. *See* Md. Code. Ann., Art. 27 § 792, *repealed by* Acts 2001, c. 10, § 1, *eff.* Oct. 1, 2001. The General Assembly enacted Art. 27 § 792, entitled "Registration of Offenders," pursuant to the requirements of the "Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program" enacted by Congress as part of the "Violent Crime Control and Law Enforcement Act of 1994." *Graves v. State*, 364 Md. 329, 336 (2001); *see generally* Ranak K. Jasani, *Note*, Graves v. State*: Undermining Legislative Intent: Allowing Sexually Violent Repeat Offenders to Avoid Enhanced Registration Requirements Under Maryland's Registration of Offenders Statute*, 61 Md. L. Rev. 739, 742–45 (2002) (tracing history of Maryland's sexual offender registration provisions).

The Court previously discussed the limited legislative history of Art. 27 § 792 in *Young v. State* as follows:

> As enacted, § 792 contained no express statement of purpose. Although it was placed within Article 27 and recodified in the Criminal Procedure Article, its location within the criminal procedure laws does not necessarily indicate an intent on the part of the General Assembly to punish sex offenders . . . . Therefore, in examining the purpose of the statute, we look

primarily to the plain language. With respect to the determination of legislative intent, we conclude that the plain language and overall design of § 792 clearly indicate that it was not intended as punishment, but rather was intended as a regulatory requirement aimed at protection of the public. There is no indication in the statutory scheme that the General Assembly intended registration or notification as a device to punish convicted sex offenders.

370 Md. 686, 712 (2002). The Court in *Young* explained that the overarching goal of the sex offender registration statute was to protect the public. *Id.* at 712; *see also In re Nick H.*, 224 Md. App. 668, 690 (2015) ("Although no statement of purpose is expressly set forth in MSORA, its history and language suggest that it is not intended to be punitive.").

This aligns with the intent of the Sex Offender Registration and Notification Act ("SORNA"),[6] which states in its declaration of purpose that it aims "to protect the public from sex offenders" by "establish[ing] a comprehensive national system for [their] registration." *Gundy v. U.S.*, 588 U.S. 128, 133 (2019); 34 U.S.C. § 20901. We keep this purpose in mind as we analyze the definition of "knowingly."

In the ensuing years, MSORA was amended from time to time,[7] and "the statutory framework governing sex [] offender registration [ ] changed significantly." *Ochoa v.*

---

[6] 34 U.S.C. § 20901 *et seq.*

[7] In the early 2000s, Maryland enacted S.B. 1, 2001 Leg., 415th Sess. (Md. 2001), which revised, restated and recodified criminal procedure laws in a non-substantive manner. *See* Dep't Leg. Servs., *The 90 Day Report, A Review of the 2001 Legislative Session*, 2001 Leg., 415th Sess. (Md. 2001). At this time, provisions governing registration for certain offenders were reenacted as Title 11, Subtitle 7 of the Criminal Procedure Article, including CP § 11-721, *added by* Acts 2001, c. 10, § 2, *eff.* Oct. 1, 2001, *amended by* Acts 2002, c. 194, § 1, *eff.* Sept. 30, 2002. The registration provisions were further amended in 2009 and 2010 in response to Congress enacting SORNA in 2006. *See Long v. Md. State Dep't Pub. Safety & Corr. Servs.*, 230 Md. App. 1, 12–13 (2016) ("A review of SORNA, together with the Attorney General's guidelines, show that many of the 2009–2010 changes to [MSORA] were required by either SORNA or the guidelines.").

*Dep't Pub. Safety & Corr. Servs.*, 430 Md. 315, 317, *recons. denied*, 430 Md. 315 (2013).

Notably, however, since its original inclusion in § 792 in 1995, the word "knowingly" as used in CP § 11-721(a) has remained undefined and unchallenged by any proposed amendment.

Given the lack of definition within CP § 11-701 *et seq.*, Mr. Hammond argues that the statute is ambiguous, and so the rule of lenity should apply. A recent federal decision interpreting SORNA is instructive on this point. In *United States v. Kokinda*, 146 F.4th 405 (4th Cir. 2025), the Fourth Circuit rejected an invitation to apply the rule of lenity:

> That rule applies only when a criminal statute contains a grievous ambiguity or uncertainty, and only if, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended. As we have consistently recognized, SORNA is a non-punitive, civil regulatory scheme, both in purpose and effect.
>
> * * *
>
> While it is true that Congress enacted criminal penalties for violating SORNA, that criminal statute is not ambiguous. It provides that whoever is required to register under [SORNA] and . . . knowingly fails to register or update a registration as required is guilty of a crime. Thus, there is no ambiguity that requires lenity in SORNA's criminal penalty statute.

*Kokinda*, 146 F.4th at 418 (internal citations and quotations omitted) (alterations in original). Construing MSORA like its federal counterpart SORNA, we too feel that there

---

Because of SORNA, "[e]very state has enacted a sex offender registration law, although the various statutes differ as to the offenses covered, registration and notification procedures," as well as penalties imposed for failures. *See Cain v. State*, 386 Md. 320, 330 n.9 (2005) (collecting statutes). For example, any person who knowingly fails to register may be imprisoned for up to ten years under SORNA (as opposed to five years under MSORA). *Compare* 18 U.S.C. § 2250(a), *with* CP § 11-721(b).

is insufficient ambiguity in MSORA rising to the level of grievousness mandating application of the rule of lenity as requested by Mr. Hammond.

### 1.     Prior Notice is Sufficient for Knowledge

As explained in Section III.B, *supra*, the definition of "knowingly" in *Correll* suggests that prior notice is sufficient to establish a knowing failure under CP § 11-721. Given Maryland's limited caselaw on this issue, we examine other jurisdictions' construction of the word "knowingly" in their respective registration statutes.

In a related criminal registration context, the Supreme Court in *Lambert v. California* concluded that before a conviction for failure to register could stand, there had to exist actual knowledge of the duty to register or proof of the probability of such knowledge. 355 U.S. 225, 229 (1957). In *Lambert*, the defendant had lived in the city for seven years without registering and circumstances which might cause one to inquire as to the necessity of registration were completely lacking. *Id.* at 226. Finding no actual knowledge of the registration requirement nor the probability of such knowledge, the Court in *Lambert* reversed the defendant's conviction. *Id.* at 229.

The Nevada Supreme Court applied the *Lambert* logic to an inverse situation within the sex offender registration context in *Atteberry v. State*, when it upheld the conviction of a challenging offender who, having previously registered, knew of his duty to register upon changing his address but failed to do so. 438 P.2d 789, 791 (Nev. 1968). Over the years, several state courts have followed suit. *See State v. Vanderpool*, 995 P.2d 104, 106 (Wash. App. Div. 3 2000) (affirming conviction of a defendant who had followed the registration statute for approximately four years before the incident at issue); *see also*

18

*People v. Garcia*, 23 P.3d 590, 592 (Cal. 2001) (explaining that defendant had knowledge of his duty to register where defendant actually read a form that stated that he had been notified of the duty to register and specified what the duty entailed); *Turner v. State*, 101 S.W.3d 750, 754–55 (Tex. App. Houston 1st Dist. 2003) (finding defendant had knowledge of his duty to register as a sex offender after signing multiple forms indicating that he was required to verify his registration information every ninety days); *State v. Casada*, 825 N.E.2d 936, 940 (Ind. Ct. App. 2005) (affirming conviction of a defendant who admitted to a deputy that he knew he should have reported his address to local law enforcement authority); *People v. Poslof*, 24 Cal. Rptr. 3d 262, 268–69 (Cal. App. 4th Dist. Div. 2 2005) (permitting jury to infer from proof that defendant was provided with notice of the duty to register that the defendant had actual knowledge); *Garrison v. State*, 950 So.2d 990, 994 (Miss. 2006) (holding that the state must prove an offender had actual knowledge of the duty to register or provide "proof of the probability of such knowledge" in order to sustain a conviction for failure to register).

The above cases are easily contrasted with *Commonwealth v. Ramirez*, where the reviewing court held that the evidence presented was insufficient to support a finding that the defendant knew he was required to register as a sex offender where there was no evidence that either (1) the defendant received notice of the registration requirement and (2) that the defendant read newspaper publications that informed sex offenders of their duty to register. 865 N.E.2d 1158, 1163–64 (Mass. App. 2007).

A prior conviction for knowingly failing to register can also form a basis from which knowledge can be inferred. *See U.S. v. Phillips*, No. 19-4271, 2022 WL 822170, at

*2 (4th Cir. Mar. 18, 2022) (per curiam) (allowing admission of sex offender's prior convictions for failing to register for the limited purpose of showing his knowledge of his duty to register as a sex offender under SORNA and holding that "[a]n essential element of the SORNA offense was that [offender] knowingly failed to register or update a registration as required by SORNA," "evidence was probative of this element, [and therefore] it was 'necessary,'" and "any possible unfair prejudice, in light of the appropriate limiting instructions, did not substantially outweigh the probative value of the evidence"); *see also State v. Clark*, 880 P.2d 562, 565 (Wash. App. Div. 1 1994) ("Lack of notice of the duty to register constitutes a defense to the crime of knowingly failing to register as a sex offender—but only for the first such offense.").

Here, like the defendants in *Atteberry*, *Vanderpool*, *Garcia*, *Turner*, *Casada*, *Poslof* and *Garrison*, Mr. Hammond has a history of receiving notice at several prior registration appointments, demonstrating Mr. Hammond's knowledge, or at the very least, proof of the probability of such knowledge. Furthermore, evidence was admitted at trial that Mr. Hammond had been previously convicted for knowingly failing to register in 2016. As was the case with the defendants in *Phillips* and *Clark*, Mr. Hammond's conviction provides notice, further supporting the notion that Mr. Hammond's failure was knowing.

### 2. Forgetting Does Not Negate *Mens Rea*

We disagree with Mr. Hammond's contention that *mens rea* can be negated by a factual finding that the defendant simply forgot. We agree with courts in other jurisdictions which have held that when a defendant "forgets," they still have the requisite *mens rea* to establish a failure to register. *See People v. Carmony*, 26 Cal. Rptr. 3d 365,

20

373 (Cal. App. 3d Dist. 2005) (failure to register as a sex offender may be committed merely by forgetting to register as required); *see also People v. Sorden*, 113 P.3d 565, 568–70 (Cal. 2005) (defendant's claim that his depression made it more difficult for him to remember to register as a sex offender did not negate the *mens rea* element of the offense and was not a defense to the charge of failure to register as a sex offender).

We fear that allowing *mens rea* to be negated by a temporary lapse in memory will have far-reaching consequences, hindering prosecution of sex offenders who recidivate. Even including the limiting principle—that only involuntary conditions can negate *mens rea*—presents difficult line-drawing problems we are not prepared to address at this juncture.[8] While we suspect that individuals with diminished capacity resulting from late-stage Alzheimer's disease[9] could lack the requisite *mens rea* necessary to be convicted under the sex offender registration statute, that issue is not before us. *See, e.g.*, *State v. Young*, 535 S.E.2d 380, 383 (N.C. App. 2000) (holding statute unconstitutional as applied to defendant, *who had been adjudicated incompetent*, because defendant needed to have

---

[8] The following questions come to mind: How severe does one's depression have to be in order to be excused from the sex offender registration requirement? Is a medical diagnosis necessary? Is expert testimony required? Are those with chronic lifelong depression forever excused from their obligation to register? Are there other involuntary mental disorders or conditions that similarly excuse one from their obligation to register, for instance, generalized anxiety? Must you be adjudicated incompetent prior to seeking this exception? Is memory loss due to ongoing alcohol or drug addiction treated similarly to other involuntary conditions? What about memory loss resulting from a traumatic brain injury?

[9] Alzheimer's disease is characterized by severe memory loss and dementia. Alzheimer's Association, *What is Alzheimer's Disease?*, https://www.alz.org/alzheimers-dementia/what-is-alzheimers (last accessed Dec. 4, 2025).

actual or constructive knowledge of the requirements before charged with violating the statute) (emphasis added). Depression, on the other hand, is a common and serious mental disorder that negatively affects how you feel, think, act, and perceive the world, and manifests through the following possible symptoms:

- Feeling sad, irritable, empty and/or hopeless.
- Losing interest or pleasure in activities you once enjoyed.
- A significant change in appetite (eating much less or more than usual) and/or weight (notable loss or gain unrelated to dieting).
- Sleeping too little or too much.
- Decreased energy or increased tiredness or fatigue
- Increase in purposeless physical activity (e.g., inability to sit still, pacing, handwringing) or slowed movements or speech that are severe enough to be observable by others.
- Feeling worthless or excessively guilty.
- *Difficulty thinking or concentrating, forgetfulness, and/or difficulty making minor decisions.*
- Thoughts of death, suicidal ideation, or suicide attempts.[10]

We highlight that forgetfulness is a symptom of depression. Forgetfulness, however, is one of many symptoms that may or may not occur. Indeed, our Supreme Court recognized over twenty years ago that "[b]eing labeled as a sexual offender within the community can be highly stigmatizing and can carry the potential for social ostracism." *Young*, 370 Md. at 713. It is no surprise that individuals on the sex offender registry routinely suffer from depression and other mental health conditions.[11]

---

[10] American Psychiatric Association, *What is Depression?*, https://www.psychiatry.org/patients-families/depression/what-is-depression (last accessed Dec. 4, 2025).

[11] This is not a new phenomenon. Studies from over twenty years ago, prior to the statute's creation, suggest a common awareness of a high prevalence of depression in convicted sex offenders:

While we commend Mr. Hammond's innovative attempt to manufacture a temporal requirement to the definition of "knowingly" under CP § 11-721(a), this approach defies logic and reason and could lead to unintended consequences. *See Hailes*, 442 Md. at 495–96, *supra* (considering the relative rationality and legal effect of a statutory construction). While we acknowledge the archival legislative history of this statue is scant, certainly, the legislature did not intend to open the floodgates and excuse all sex offenders struggling with depression from their obligation to timely register. Nor could the legislature have intended to excuse anyone who merely says, "oops, I forgot"—no matter how disingenuous. We resonate with California's highest court's reasoning in *Sorden*:

> Just as it would effectively eviscerate the statute to permit sex offenders to escape the consequences of failing to register on the ground they simply forgot to do so, so, too, would it effectively eviscerate the statute to countenance as an excuse a condition that falls short of nullifying knowledge of one's registration obligations.

---

Mood disorders have been found to be prevalent in samples of sex offenders. In a sample of adult males with paraphilias or paraphilic related disorders, Kafka and Prentky (1994) found that 75% had a diagnosable mood disorder, with over 50% meeting diagnostic criteria for dysthymia. Mood disorders were the most prevalent Axis I disorders among both groups, especially early onset dysthymic disorder and *major depression* (Kafka and Hennen 2002) . . . . *Given the practical, legal, and psychosocial consequences of a sex offense conviction, it is not surprising that sex offenders may experience acute situational mood disorders, such as depression.*

Elizabeth L. Jeglic, *et al.*, *The Prevalence and Correlates of Depression and Hopelessness Among Sex Offenders Subject to Community Notification and Residence Restriction Legislation*, Amer. J. Crim. Just., 46, 47 (2011) (citing Martin P. Kafka, *et al.*, *A DSM-IV Axis I Comorbidity Study of Males (n=120) with Paraphilias and Paraphilia-Related Disorders*, 14 Sex Abuse J. Res. Treat., 349–66 (2002); Martin P. Kafka, *et al.*, *Preliminary Observations of DSM-III-R Axis I Comorbidity in Men with Paraphilias and Paraphilia-Related Disorders*, 55 J. Clin. Psychiatry, 481–87 (1994) (emphasis added)).

23

*Sorden*, 113 P.3d at 569–70 (citing *People v. Barker*, 96 P.3d 507, 511 (Cal. 2004)).

The court continued:

> As a society, we have become increasingly aware of how many of our fellow citizens must cope with significant physical and mental disabilities. But cope they do, as best they can, for cope they must. So, too, must defendant and other sex offenders learn to cope by taking the necessary measures to remind themselves to discharge their legally mandated registration requirements.

113 P.3d at 569. As oft repeated, "ignorance of the law is no excuse."[12] Individuals who forget, however, are not totally ignorant. "Forgetting presupposes knowledge." *Barker*, 96 P.3d at 511. We agree with the trial court that "I forgot doesn't mean you didn't know, it simply means I forgot. There's a distinction between not knowing and a forgetting." In simplest form, you cannot forget what you do not know; you must have known in order to forget.[13] We hold that "forgetting" does not negate *mens rea*.

We express our deepest condolences for the losses suffered by Mr. Hammond. Furthermore, the mental health of anyone (especially those wrapped up in our criminal

---

[12] *See Vanderpool*, 995 P.2d at 106, *supra* Section III.B.1; *see also Shevlin-Carpenter Co. v. State of Minnesota*, 218 U.S. 57, 68 (1910) ("In other words, ignorance cannot be asserted of an action which violates existing law, and ignorance of the law will not excuse."). This phrase stems from the Latin maxim, *ignorantia legis neminem excusat*. *See* Ronald A. Cass, *Ignorance of the Law: A Maxim Reexamined*, 17 Wm. & Mary L. Rev. 671 (1976); *see also U.S. v. Int'l Minerals & Chemical Corp.*, 402 U.S. 558, 566 (1971) (Stewart, J., dissenting) ("If a statute provides that it shall be an offense 'knowingly' to sell adulterated milk, the offense is complete if the defendant sells what he knows to be adulterated milk, even though he does not know of the existence of the criminal statute, on the time-honored principle of the criminal law that ignorance of the law is no excuse.").

[13] We refrain from putting memory on trial, as we recognize the human memory can be unreliable at times. "Remember my friend, that knowledge is stronger than memory, and we should not trust the weaker." Bram Stoker, *Dracula* (1897).

legal system) including Mr. Hammond, is not a matter we consider lightly. We also acknowledge the burden of registration on convicted sex offenders. The defendant in *Hyman v. State*, for example, recently described the burden of sex offender registration on him, noting that he "would have extreme difficulties in alluding to [his] daily parental duties with [his] children in concerns with school, and community, and social outings, etc." 463 Md. 656, 676 (2019). We also keep in mind that the General Assembly thoughtfully chose to give convicted sex offenders the opportunity to regain a bit of their freedom, in exchange for the long-lasting recurring duty to register on time. CP § 11-721 furthers the holistic goal of MSORA—protecting the general public—by encouraging compliance through the threat of fines or incarceration in cases where the failure was "knowing." Though Det. Garner may not have provided an additional warning to Mr. Hammond reminding him that his registration date was approaching, she was not so inflexible not to provide any accommodations to registrants like Mr. Hammond in cases of emergencies, including the death of family members—if timely notified.[14] The record reflects that Mr. Hammond did reschedule his February registration date for similar reasons advanced now, by calling Det. Garner on the day of his appointment. Carving out an exception for offenders who "forget," especially when rescheduling in cases of extenuating circumstances is an option, would not adhere to the legislature's goal of encouraging compliance to keep the public informed and safe. Mr. Hammond knew of his

---

[14] Det. Garner testified that "there have been instances before where there's a medical emergency or a family death or something like that, I generally try to work with them if they notify me either before or the day of, or before their expiration date, and I'll work something out with them."

25

obligation to register, knew how to reschedule his appointment, yet failed to do either. Mr. Hammond's mistake, though unfortunate, did not negate his *mens rea*.

### 3. The Trial Court Has Discretion to Consider Extenuating Circumstances at Sentencing, but Consideration Does Not Mandate Acquittal

We agree with the State that a trial court is permitted to consider a defendant's forgetfulness as mitigation at sentencing, as the trial court did here. In imposing Mr. Hammond's sentence, Judge Greer expressed his concern about the length of time that passed before Mr. Hammond actually registered, scrutinizing the two week delay here. Judge Greer also recognized that Mr. Hammond did not realize his mistake on his own, and "had to be reminded." After all, "the longer the delay in registering, the less credible the claim of 'I forgot' becomes." *Barker*, 96 P.3d at 520 (Kennard, J., dissenting). Nonetheless, Judge Greer acknowledged that "there was a lot of circumstances going on and [that he is] not sure that in all these circumstances that it's necessary for any type of jail time, given the offense in this case."

In the Unsupervised Probation Order, Judge Greer ordered that Mr. Hammond "continue to seek treatment for mental health and follow all recommendations." Judge Greer considered Mr. Hammond's extenuating circumstances during sentencing and though he imposed a five-year sentence, the maximum duration under CP § 11-

721(b)(2),[15] he suspended all years of incarceration and sentenced Mr. Hammond to unsupervised rather than supervised probation.

The mitigation of Mr. Hammond's sentence was a proper exercise of the circuit court's broad discretion in sentencing. *See Jones v. State*, 414 Md. 686, 693 (2010) ("A trial judge has 'very broad discretion in sentencing.'") (quoting *Jackson v. State*, 364 Md. 192, 199 (2001)). At sentencing, the trial judge is tasked with tailoring the criminal sentence to fit the "facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, *health*, habits, *mental* and moral *propensities*, and social background." *Poe v. State*, 341 Md. 523, 531–32 (1996) (emphasis added). Here, Judge Greer appropriately tailored Mr. Hammond's sentence to account for past and future mental health challenges that impede upon Mr. Hammond's ability to comply with CP § 11-721.

**CONCLUSION**

We hold that Mr. Hammond's claim is adequately preserved for appeal; thus, we address the merits. Several facts adduced by the evidence presented at trial established that Mr. Hammond was on notice of his duty to register, including that: (1) Mr. Hammond received and signed a requirements form; (2) Mr. Hammond had previously timely registered; (3) Mr. Hammond was previously convicted for failure to register; and (4) Mr. Hammond testified that he forgot. As the trial court rightly recognized, it was undisputed

---

[15] CP § 11-721(b)(2) states as follows: "(b) A person who violates this section . . . (2) for a second or subsequent offense, is guilty of a felony and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both."

27

that Mr. Hammond knew he had to register, was given the date to do that, and knew how to reschedule his appointment since he had done that in February. Taken together, we conclude Mr. Hammond "knowingly" failed to register under CP § 11-721(a).

Upon review of the definition of "knowingly" in the Criminal Law Article, the overall purpose of MSORA, and other jurisdictions' treatment of the word "knowingly," we are persuaded that Mr. Hammond's conviction should stand. We conclude that (1) prior notice is sufficient to establish knowledge, (2) the *mens rea* is not negated by forgetting, and (3) mitigation at sentencing is proper relief where extenuating circumstances prevent one from fulfilling their obligation under CP § 11-721(a). In interpreting a statute, we must avoid an illogical or unreasonable result, or one that is inconsistent with common sense. *Kaczorowski*, 309 Md. at 513. If we were to hold that "I forgot" is a complete defense, it would eviscerate the entire purpose of the registration statute.

**JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

28